JOHN H. STEVENS & another *vs.* BOSTON AND WORCESTER RAILROAD CORPORATION.

A shipment of goods by the owner, under an agreement by which the consignee has advanced money thereon, and agreed to make a further advance on receiving the bill of lading, gives the consignee a title to the goods to secure both advances, as against one who afterwards, though before this bill of lading is delivered, receives a second bill of lading of the goods, with notice that the first has been issued.

A common carrier, receiving goods from a wrongdoer, has no lien thereon against the rightful owner, even for freight which he has paid to a previous carrier, by whom the owner had directed them to be carried.

REPLEVIN of three hundred and ninety seven barrels of floui. The answer denied the plaintiffs' property; and alleged that the defendants, as common carriers, brought the flour to Boston for Charles J. Bishop & Co., who paid the freight thereon, and for whom the defendants now held the flour; and that the defendants had a lien on the flour for the amount of the freight, either for their own benefit, or for the benefit of Bishop & Co., and the plaintiffs had no right to it without paying the freight.

At the trial in the court of common pleas, before *Mellen*, C. J., it appeared in evidence that the flour was originally the property of Thomas W. Williams; and that there were two bills of lading of this flour, both dated at Milwaukie, October 14th 1854, and signed by the master of the Propeller Bucephalus, one of which was made out to the plaintiffs, and stated that the shipment was made by said Williams; and the other, which stated that the shipment was made by William Brown & Co., was made out to Bishop & Co., who, before receiving it, had made advances on account of flour to be sent them by Brown & Co., but not upon this specific flour, and who paid the defendants the freight from Milwaukie to Boston, amounting to about $700.

The plaintiffs introduced evidence tending to show that on said 14th of October (which was Saturday) the agent of the plaintiffs made an agreement to advance upon said flour $3,000; $1,500 on that day, and $1,500 when he got the bill of lading; that he did actually advance $1,500 on that day, about three

o'clock in the afternoon, and ordered the flour to be put on board the Propeller Bucephalus for the plaintiffs; and on Monday, the 16th of October, got said bill of lading, and paid the additional $1,500, as agreed.

It also appeared that the flour was put on board the Bucephalus on the evening or night of the 14th of October; that the bill of lading to Bishop & Co. was executed on the 15th of October, and delivered to Brown & Co. either on the 15th or 16th of October; and the bill of lading to the plaintiffs was delivered to them on the 16th of said October.

There was evidence tending to show that the firm of Brown & Co. on Friday or Saturday, the 13th or 14th of October, made an arrangement with Williams to advance upon said flour, and did actually advance thereon, six dollars per barrel; but there was conflicting evidence upon this point, and it was contended that Brown & Co. never advanced at all upon the flour, or, if at all, not until the 16th of October, after notice of the first bill of lading. It appeared that the captain of the Bucephalus declined to issue the bill of lading to Brown & Co., on the ground that he had already given one to the plaintiffs; and it was contended by the plaintiffs that the second bill of lading was a fraud of Williams and of Brown & Co. to deprive the plaintiffs of the flour in dispute.

The defendants contended, "that as the bill of lading was given to William Brown & Co. first, and the same was delivered for a good and valuable consideration, and without notice of the claims of the other party, the property vested in them, and could not be devested without their consent; that no title to said property could vest in the plaintiffs, in any event, till after the whole $3,000 had been advanced, and the bill of lading had been delivered to them; that until this was done the transaction between Williams and the plaintiffs was incomplete; and that if said William Brown & Co. had, in good faith, and before that time, advanced upon said property, and received a bill of lading therefor, their title would be complete, and prior and superior to that of the plaintiffs."

They also contended, "that said goods having been brought

over the defendants' road, they were entitled to hold the same for the freight thereof; and the fact that the freight had been paid by Bishop & Co. made no difference, because it was paid by them with the expectation of receiving the property; and if the same was not delivered to them, they would have a claim upon the defendants to recover back the freight so paid." And they further contended, " that, even if the plaintiffs were the owners of the property, still Bishop & Co. were entitled to hold the same for all advances made by them on account of the same."

The court instructed the jury, " that the questions of fact, which bill of lading was given first; whether William Brown & Co. had made any advances, in good faith, upon the flour; and whether they had notice of the plaintiffs' bill of lading when they received their own, were to be settled by the jury upon the testimony in the cause; that the title under which the plaintiffs claimed was, that Thomas W. Williams (who was admitted by both parties to have been the original owner of the flour in dispute) had conveyed it to them through the intervention of an agent; and that if the jury were satisfied that Williams had, on Saturday the 14th of October, agreed with the plaintiffs' agent to consign the specific barrels of flour in dispute to the plaintiffs, and to receive as an advance upon the same $1,500 in cash and $1,500 on delivery of the bill of lading; and that the agent of the plaintiffs did then pay the advance of $1,500, and direct Williams to ship said flour to the plaintiffs by the Propeller Bucephalus, and that Williams did accordingly deliver the flour to the master of the Bucephalus, (said master being a common carrier between Milwaukie and Buffalo,) to be forwarded to the plaintiffs, and that the master received the same on board his propeller, and did on that day, or the next, issue his bill of lading to the plaintiffs for said flour; then, after these transactions, the right to the possession of the flour was in the plaintiffs, and the master of the Bucephalus could not issue new bills of lading to Brown & Co., either with or without the direction of Williams; that although the additional $1,500 were to be paid on the receipt of the bill of lading, that fact alone did not make

the title to the flour incomplete, or prevent the right of possession from vesting in the plaintiffs, or enable Williams to make a new sale of it after it was delivered to the common carrier for the plaintiffs; and that although the second bill of lading might have come into the possession of Brown & Co. before the first bill of lading came into the possession of the plaintiffs' agent, that did not take away the plaintiffs' right of possession, as the evidence tended to show one of the firm of Brown & Co. had previous notice of the issue of the plaintiffs' bill of lading."

The court also instructed the jury, that the defendants could not retain possession of the flour for the payment of the freight once due to them as common carriers, and paid by Bishop & Co. before the commencement of this suit; and declined to instruct the jury, according to the defendants' request, that even if the plaintiffs were the owners of the property, still Bishop & Co. were entitled to hold the same for all advances made by them on account of the same.

The court also instructed the jury, for the purposes of the trial, that the burden of proof was upon the plaintiffs to show that they had made advances upon the flour, which had not, up to the time of the trial, been paid.

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*W. Brigham,* for the defendants.

*H. F. Durant,* for the plaintiffs.

BY THE COURT. 1. The defence is placed in the answer, partly on the defendants' own lien for freight, and partly on the rights of Bishop & Co.; but Bishop & Co. are the real defendants. It is a question of priority of lien — of priority of title. This case depends on a question of fact — To whom did Williams first transfer the possession? But it does not depend on the mere priority of signing either bill of lading; it is the shipment which gives the lien — the delivery on board the boat of the common carrier, with notice to the party, which would vest the property in him. The question is, which in fact made the advance; and on whose account did Williams deliver it on board the Bucephalus; for possession is essential to the lien

Stevens & another *v.* Boston and Worcester Railroad Corporation.

This question was left to the jury, with instructions which were full, accurate and well adapted to the evidence.

If the first delivery was to the plaintiffs, the second delivery was a fraud upon them. To sign two bills of lading at the same time was a fraud upon somebody, and it was a question for the jury upon which.

2 The defendants objected that, as the plaintiffs actually advanced only $1,500 when the contract was made with them, the delivery could not be considered as made until they advanced the remaining $1,500. But this is a question of special property, of possession necessary to support the lien; and when the lien had attached, it would support advances to be made as well as those already made.

3. Then a question arises as to the lien of the defendants. It appears that a custom, and a very convenient one, has sprung up, for each carrier on a line of transportation to pay the previous carrier, so that the freight goes on accumulating, and the consignee receives the goods of the last carrier, on paying to him the full amount of all the freights. The defendants' right depends on the question whether they rightfully paid the freight to a party entitled to it. *Robinson* v. *Baker*, 5 Cush. 137. If the freight would not be due to the subsequent carrier, it would not be due to the previous carrier, and therefore the subsequent carrier could not acquire any lien by claiming under a previous one.

4. Then it was said that the carriage, by whomsoever rendered, was beneficial to the plaintiffs, as far as Albany; because, by either bill of lading, the property was intended to be carried by the same conveyance to that point. But the defendants' title depends on the title of their employers. *Non constat* that the injury did not exceed the benefit. The true reason why the defendants have no lien is, that those who undertook to ship had no authority to ship, and therefore no authority to create a lien on the goods. *Exceptions overruled.*