## M'Intyre *against* Carver.

A was engaged by B to do the carpenter work of a house, and employed C to make a number of doors for it; the material for the doors being furnished by B to A, and delivered by A to C. When the doors were finished, A notified C that he was ready to pay him the balance coming to him for making the doors, and required their delivery. A brought replevin against C for the doors, and afterwards A paid C the amount in full for his work. *Held*, that the defendant had a lien on the doors at time of suit brought, and might retain them till he was paid for his work; and that the plaintiff could not recover, as he had not tendered the price before suit brought.

Every bailee who has by his labour or skill conferred value on specific chattels bailed to him, has a particular lien on them; but such lien does not exist in favour of a journeyman or day-labourer.

ERROR to the District Court for the city and county of *Philadelphia.*

This was an action of replevin, brought by John E. Carver against William M'Intyre, for 34 panel doors. The defendant pleaded not guilty, and afterwards, at the trial, *non cepit* and property. The defendant gave bond to the sheriff on service of the writ.

It appeared in evidence that the plaintiff was employed by Nicholson, the owner of a house then being built in Philadelphia, to do the carpenter work, and that in December 1835 he engaged

the defendant to make 34 panel doors for the house. The defendant had been employed a part of the time at the building, but had a place of his own where he did this work, the lumber for the doors being furnished by the owner to the plaintiff, and by him delivered to the defendant. It was agreed the defendant should be paid at the rate of 50 per cent. off from carpenter's prices. The doors were finished in April 1836. In May 1836, a measurement of the work on the doors was made at the instance of the defendant, in the absence of the plaintiff. On the 28th of June 1836, the defendant gave the plaintiff the following notice:—

"Take notice, that unless you pay me for my labour in making 30 panel doors which I have made for you, I will sell the same at public sale, to obtain payment for my work thereon, in ten days from this date."

The following notice from the plaintiff to the defendant, dated the 1st of July 1836, offered in evidence by the plaintiff, was admitted by the court, and exception taken by the defendant:—

"You are hereby notified that I am ready to pay you the balance coming to you for making panel doors, &c. for me, and that I require their delivery; this offer, which I have before made to you, I now repeat, and unless you comply therewith and deliver the doors, I will take measures to obtain them by law."

On the 16th of July this replevin issued. On the 3d of August, another measurement was had by persons mutually chosen, and the former measurement was somewhat reduced. On the 9th of August 1836, the plaintiff paid the defendant the amount due by the last measurement, who gave the following receipt:—

"Received, August 9th, 1836, of John E. Carver, forty-one dollars and fifty-five cents, in full for doors, flooring work, at 10th street and Shippen.

                      Wm. M'Intyre."

On the 16th of May 1837, the defendant gave the plaintiff the following notice:—

"Please take notice, that William M'Intyre claims one dollar per week for 48 weeks' storage of your goods (30 panel doors); and if the money is not paid, and the said goods removed, on or before the first day of June next, at 12 o'clock on that day, they will be sold at public vendue, for the payment of said storage and expenses."

One of the defendant's witnesses stated it was the custom to pay so much weekly for piece-work, except there is a special contract, and the balance when measured; but the work is delivered before it is paid for, that is to say, before the balance is paid.

The court charged the jury as follows:—

The controversy in this suit relates to 30 panel doors. It

appears that the plaintiff was employed by Mr Nicholson to do the carpenter work to a house corner of 10th and Shippen streets. He employed the defendant to make the doors in question for that house. The defendant had been employed about the building a part of the time; but, according to the testimony of Mr Brannagan, Mr Carver not having room in his shop, he employed defendant to make the doors at his own house. The agreement between the parties (according to the same witness) stipulated that he should be paid at the rate of 50 per cent. off from the carpenter's prices. The doors were made by defendant at his cellar. It appears that he asked payment for his work, with a notice that he would sell if not paid in 10 days. The defendant claims to recover on the ground of a lien on the doors till paid. Taking all the facts as they have been in evidence, the defendant has no lien on the doors.

The defendant excepted to this charge. The jury gave a verdict for the plaintiff.

The *errors assigned*, of which the second was the only one relied on, were—

1. Because the Judge admitted in evidence the notice of May 16th, 1837.

2. Because the Judge charged the jury that the defendant had no lien upon the doors in dispute for his work done.

3. Because the Judge took the case from the jury in his charge.

*Hirst*, with whom was *J. G. Thompson*, for plaintiff in error. The defendant had a lien. It was the duty of the plaintiff to have tendered the debt due to the defendant for his work, and the defendant's lien remained till that debt was discharged. This has now become an universal rule where additional value has been given to a chattel by work and labour expended on it. 6 *Wend.* 609; *Cross on Lien* 24; 2 *Kent's Com.* 633. The payment by the plaintiff after suit brought, does not entitle him to recover.

*Hopkins, contra.* The defendant claimed property, and gave bond. A settlement afterwards took place, but the doors were not delivered up. It was not till after suit brought that the defendant took steps to ascertain the amount due him; viz. to appoint measurers. It became necessary for the plaintiff to proceed with the suit to obtain the doors; and at the trial, the defendant pleaded *non cepit* and property. On the trial, the defendant claimed storage for things which Carver had paid for, and the defendant had neglected to deliver.

The defendant was only a servant of Carver, who was employed by Nicholson. Carver might have had this lien, but not a subworkman. If he had, yet his claim was not ascertained by measurement. Evidence was given that it was the custom to pay so much weekly for piece-work, (and we produced receipts accord-

[M'Intyre v. Carver.]

ingly,) but that the work is to be delivered before the balance is paid. Whatever was the defendant's right at commencement of suit, yet after receiving payment his lien was gone.

The opinion of the Court was delivered by

GIBSON, C. J.—It is not to be doubted that the law of particular or specific lien on goods in the hands of a tradesman or artisan for the price of work done on them, though there is no trace of its recognition in our own books, was brought hither by our ancestors; and that it is a part of our common law. It was as proper for their condition and circumstances here, as it had been in the parent land; and though a *general* lien for an entire balance of accounts, was said by Lord Ellenborough in *Rusforth* v. *Hadfield*, (7 *East* 229,) to be an encroachment on the common law, yet it has never been intimated that a particular lien on specific chattels for the price of labour bestowed on them, does not grow necessarily and naturally out of the transactions of mankind as a matter of public policy. Originally the remedy by retainer seems to have been only co-extensive with the workman's obligation to receive the goods; a limitation of it which would, perhaps, be inconsistent with its existence here, for we have no instance of a mechanic being compelled to do jobs for another. But even the more recent British decisions have extended it to the case of every bailee who has, by his labour or skill, conferred value on the thing bailed to him. *Chapman* v. *Allen*, (Cro. Car. 271); *Jackson* v. *Cummins*, (5 *Meeson & Welsby* 349). But as an exclusive right to the possession of the thing is the basis of such a lien, it exists not in favour of a journeyman or day-labourer, whose possession is that of his employer, and who has no other security for his wages than the employer's personal responsibility on the contract of hiring; and he who claims it, therefore, must be a bailee under the contract which the civilians call *locatio operis faciendi.* The defendant below was undoubtedly such a bailee, and entitled to retain his work for the price of it; for though the plaintiff was not the absolute owner of the material delivered, he had power, by virtue of his contract with the owner, to employ whom he would to work it up and thus give room for a specific lien on it, which would be available against both himself and his employer. Indeed, having this material as a master-builder, and consequently having a special property in it, he may be said to have been, for the purposes of his business, the owner of it; and his delivery of it to the defendant to have it made into doors, gave the latter an indisputable lien on it for the price of his work. But it was testified by a witness that it is the custom of the craft when they do piece-work, to bring it home for delivery before the price can be demanded; and the defendant is shown to have offered to pay when the doors should be delivered to him. The existence of such a custom, if it were worth any thing, was for the jury under pro-

[M'Intyre v. Carver.]

per direction, and not for the Judge who assumed all the circumstances necessary to pronounce that the defendant had not a lien. But taking the custom to have been established, it follows not that it can supersede the rule of concurrent performance in other cases, which makes tender a condition precedent on the part of him who chooses to take the first compulsory step. Now, though the plaintiff professed a willingness to pay when the work should be brought home, this was not itself a tender, but an offer to close with any tender which might come from the other side; and even the previous profession of a willingness to tender, is not equivalent to an actual tender at the proper time. Before the plaintiff brought his action, he ought to have gone to the defendant and offered him his money; by which he would have left the latter without the shadow of an excuse. He, however, actually tendered it, and the defendant accepted it, after suit brought; and hence it has been suggested that as there was no right of retainer at the time of the trial, there was nothing to stand in the way of a recovery. But the suit was brought before the right of action was made complete, and such a defect cannot be cured by any subsequent act except a binding agreement not to take advantage of it; nothing of which took place here, for the money was paid and received without stipulation or terms connected with the pending action. For instance, he who sues on a bond before it is due, must discontinue, pay costs, and begin again at the proper time; and so rigid is the law on this point, that if any part of the cause of action happens to be laid as of a time subsequent to the impetration of the writ, it is good cause to arrest the judgment. The reason is, that a court of law has no power to control the costs; and to allow a demand subsequently due to be recovered in an action brought too soon, would mulct a party who had done no wrong. Now, at no stage of this case, was the defendant a wrong-doer. When the action was brought, he had done no more than exercise his undoubted right of retention; and when his money was afterwards tendered to him, what was he to do? Had he rejected it and continued to withhold the property, he would have become a wrong-doer in earnest, and subjected himself inevitably to the costs of a fresh action. His only course, therefore, was to take the money, and let the plaintiff take the property, and his own course as to the pending suit. The latter, it seems, did not take the property; and he now attempts to recover damages and costs as if he had tendered the price of the work before action brought, though the defendant was at no time in fault. It was error, therefore, to direct that, under the circumstances of the case, the latter had not a lien.

Judgment reversed.