# Young *v.* Couche, Appellant.

*Estrays—Impounding stray animals — Lien — Replevin — Acts of April 13, 1807, 4 Sm. L. 472, and April 19, 1901, P. L. 88—Conditional verdict.*

1. Where an action of replevin has been brought to secure possession of a horse which had strayed upon defendant's inclosed lot, and had been seized by the defendant to secure compensation for the damage it had done, the defendant may show that he had acquired a lawful lien upon the horse, and that the owner could not recover possession of it with the consequent destruction of the defendant's lien, except upon the conditions contemplated by sec. 6 of the Act of April 19, 1901, P. L. 88, which provides that "if any party be found to have only a lien upon said goods and chattels, a conditional verdict may be entered which the court shall enforce in accordance with equitable principles."

2. The defendant under such circumstances is not shut up to the remedy provided by the Act of April 13, 1807, 4 Sm. L. 472, in order to secure his damages.

Argued Oct. 17, 1912. Appeal, No. 47, Oct. T., 1912, by defendant, from judgment of C. P., No. 3, Phila. Co., June T., 1909, No. 2,083, on verdict for plaintiff in case of Adaline Young *v.* Louis Couche. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Reversed.

Replevin for the possession of a horse. Before Davis, J.

At the trial the defendant made the following offer:

Mr. Eyre: I propose to prove by this witness that he was on June 29, 1909, and still is, the owner and occupier of premises at Seventy-second street and Haverford avenue, West Philadelphia; that said premises were inclosed on every side, partly by fences and partly by buildings; that the witness conducted a business on the premises of growing flowers, and included in those flowers was a large number of plants of half grown violets, being made ready for the market; that on the day in question the horse of the plaintiff, coming from some place outside of the defendant's premises, jumped over the fence or gate of the defendant and ran wild and loose upon the defend-

ant's premises, and in so doing trampled upon and down a large number of violet plants, causing a damage of not less than $300; that the defendant and his employees, as soon as possible on that day, caught the horse and put him in the defendant's stable; that the defendant, immediately, and on the same day, notified the owner, the plaintiff, by telephone as to what he had done, namely, that he had taken the horse while straying upon his property and doing damage, and that he proposed to hold said horse until the damage which had been suffered was paid at least to the extent of the value of the horse, otherwise he would hold and sell the horse according to law; that either on the same day or the next day the plaintiff issued the writ of replevin which is now before the court, and took the horse away and has had the horse in her possession ever since.

Mr. Vale: I object to the offer because it is immaterial and irrelevant to the issue now before the court for trial; and for the additional reason that the whole offer goes to the proof of damages sustained or alleged to have been sustained by the defendant, which damages cannot, in this form of action, by way of set-off or otherwise, be recovered, since they were damages alleged to have been sustained by reason of the trespass committed by an alleged stray horse.

The Court: This is an action in replevin under the act of 1901. The pleadings follow that act. It appears from the offer that the question of damages involving the negligence of the plaintiff here would necessarily arise. We are not convinced that it is proper to claim damages of this form under the replevin act of 1901. The objection is sustained. [1]

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (2) in giving binding instructions for plaintiff.

*Lincoln L. Eyre,* for appellant.—The Act of April 19, 1901, P. L. 88, does not affect any rights, but simply regulates the procedure, in replevin cases. The appellee having cut the ground from under the appellant's feet by replevying the horse, the appellant was forced to proceed with the replevin. It was then incumbent upon the appellee at the trial of the replevin to justify the taking of the horse: Drumgoole v. Lyle, 30 Pa. Superior Ct. 463.

As the precise question raised by this appeal does not seem as yet to have been passed upon by this court or by the Supreme Court, we venture to cite a decision by Judge CLAYTON, of Delaware county, in the case of Moore v. Trout, 2 Del. County, 13, in which the court went so far as to quash a writ of replevin for cattle taken as stray animals damage feasant under the act of 1807.

*Ruby R. Vale,* for appellee.—It is a well-recognized rule of law in this commonwealth, established by a long line of decisions, that where a specific remedy is provided by statute for the enforcement of a statutory liability, it must be strictly followed, and where anything is directed to be done by any statute, the directions must be strictly pursued: Lane's App., 105 Pa. 49; Katch v. Coal Co., 19 Pa. Superior Ct. 476; Ayers v. Ayers, 8 Pa. Dist. Rep. 734; Mellinger v. Deibler, 1 Lanc. Law Rev. 73; Shugar v. Meily, 4 Pa. C. C. Rep. 77; Bair v. Diller, 18 Pa. C. C. Rep. 521; Rothey v. Worcester, 33 Pa. C. C. Rep. 168.

A further and controlling answer to appellant's contention is that appellant had as security for the horse, appellee's bond filed at the time of the issuance of the writ of replevin and this for all intents and purposes took the place of and was substituted for the horse, and appellant had the same remedy on the bond that he would have had as against the horse: Stewart v. Wolf, 7 Atl. Repr. 165; Bair v. Warfel, 5 Lanc. Law Rev. 81; Woglam v. Cowperthwaite, 2 Dallas, 68; Gray v. Wilson, 4 Watts, 39; Waltman v. Allison, 10 Pa. 464.

OPINION BY HEAD, J., February 27, 1913:

The plaintiff's ownership of the horse replevied being admitted she easily made a prima facie case. By way of defense the defendant offered to prove he had seized the horse while trespassing on his inclosed lot and had given notice to the owner that it would be held to secure compensation for the damage it had done. That he had thereby acquired a lien on the horse which gave him such a qualified right of possession as either to defeat the action or at least to entitle him to the conditional verdict provided for in sec. 6 of the act of 1901. The learned trial judge refused to receive the evidence suggested in the offer and directed a verdict for the plaintiff. From the judgment that followed this appeal was taken.

1. Assuming as we must that the proof would have sustained the rejected offer, had the defendant acquired a lien on the chattel which was the subject of the action? The right of seizing and impounding stray animals, damage feasant, is as old as the common law. It was declared and given statutory sanction by our Act of April 13, 1807, 4 Sm. L. 472. The right to impound necessarily involves the idea of holding possession of the thing impounded to enforce the performance of some duty, the payment of some debt or the like by the owner of the chattel. This is but another way of saying that a lien was created against the property. Among the many judicial definitions of the word "lien," collated in 5 Words and Phrases, pp. 4144, et seq., one will suffice: "A lien is a claim which one person has upon the property of another as a security for some debt or charge; a tie that binds property to a debt or claim for its satisfaction." It follows that if the defendant had lawfully seized and impounded the plaintiff's horse he had acquired a lien upon it.

2. How did the existence of this lien affect the right of the owner to replevy her horse? Prior to the Act of April 19, 1901, P. L. 88, the remedy by replevin would not have been available to the owner until he had first paid

or tendered the amount of the debt or damages secured by the lien: McIntyre v. Carver, 2 W. & S. 392; Mathias v. Sellers, 86 Pa. 486. The legislature, however, in the act last named, changed the entire practice and procedure in actions of replevin and enlarged their scope to the extent at least of making that remedy available to an owner even where, as here, the defendant had acquired a lien upon the chattel. It was well said by Judge HENDERSON, speaking for this court, in Drumgoole v. Lyle, 30 Pa. Superior Ct. 463: "The Act of April 19, 1901, P. L. 88, does not except from its operation any action of replevin distinguishable from others because of the particular facts out of which it arises. . . . The title; the provisions for giving a bond before the writ goes out; for the service; for the admission of intervening parties; for the filing of a declaration under oath and an affidavit of defense clearly indicate that the statute was intended to provide a convenient practice under which the rights of all parties interested in the property might be worked out."

The sixth section clearly indicates that the legislature did not regard the facts here present as an obstacle in the way of its general intent "to provide a convenient practice under which the rights of all parties interested in the property might be worked out." It declares: "If any party be found to have only a lien upon said goods and chattels, a conditional verdict may be entered which the court shall enforce in accordance with equitable principles." Such verdicts in equitable actions of ejectment have long been familiar to the profession. When therefore the plaintiff, after notice that her horse had been impounded, availed herself of her statutory right to begin an action of replevin, she brought the defendant into a court fully equipped with the legal machinery necessary to ascertain not only the fact of her ownership, but also the existence of a lien upon her property and the conditions on which that lien, with its incidents, should be released and her property restored to her. Upon what theory then could the learned trial judge deny to the

defendant the right to avail himself of the provisions of the section of the act quoted and thus end the controversy?

3. It is argued the defendant in the present action was shut up to the remedy provided by the act of 1807 in order to secure his damages. To so hold would be first of all a violation of the general legal principle that multiplicity of actions is a thing to be avoided. Directness and simplicity of remedy are greatly to be desired. Moreover, the present plaintiff had the right of choice of remedy. Upon the receipt of notice she could have applied to a justice of the peace for the appointment of viewers and thus invoked the remedy to which she now seeks to confine the defendant. It is anomalous that she should be heard to contend that while she herself could choose the more direct and expeditious remedy to assert her ownership of the horse, the defendant was to be left to a more complicated one to enforce his lien upon it. If the two acts of 1807 and 1901 are so necessarily inconsistent that both cannot stand, it is the former that must give way as the result of the repealing clause contained in the latter. But in proper cases neither offers any obstacle to the operation of the other. Had the present plaintiff seen fit to pursue the remedy given to her by the act of 1807, the defendant would have been obliged to follow the procedure therein prescribed to enforce his lien. Had she permitted her horse to remain in the defendant's possession, the same result would have followed. By electing to sue out a writ of replevin she could recover the possession of her chattel, but she could not deprive the defendant of the benefit of his lien if he had acquired one. It would simply be transferred from the chattel to the bond which stood in lieu of it. As matters now stand the verdict and judgment in the action of replevin have fixed her ownership of the horse. She may dispose of it when and where she chooses and put the money in her pocket. The conditions of her bond have been satisfied by her successful prosecution of her writ and therefore.

it would not support a future action by the defendant to recover damages awarded to him in a different proceeding.

Viewing the situation from every angle, we are impelled to the conclusion that the learned trial judge fell into error in refusing to permit the defendant to prove that he had acquired a lawful lien upon the plaintiff's straying horse and that the owner could not recover the possession of the horse with the consequent destruction of the lien except upon the conditions contemplated by the sixth section of the replevin act. The assignments of error are therefore sustained.

Judgment reversed and a venire facias de novo awarded.