# Stern v. Sica, Appellant.

*Bailment—Lease of automobile—Repairs by lessee—Lien for repairs.*

Where a lease of an automobile for a certain term at a weekly rental, provides that the automobile shall be returned at the termination of the lease "in as good condition" as when delivered, but gives the lessee no right to impose a lien upon it for repairs, and after a period the lessee defaults in the payment of rental, a repairman who has possession of the automobile when the default occurs, cannot claim a lien upon it for repairs ordered by the lessee, or withhold it from the possession of the lessor until his charges are paid.

Argued Oct. 17, 1916.   Appeal, No. 404, Oct. T., 1915, by defendant, from order of C. P. No. 4, Philadelphia Co.,

June T., 1915, No. 4717, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Milton Stern and Louis L. Bellow, trading as Auto-Transit Company v. Ralph Sica and Thomas Rynone and Automobile Sales Corporation. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Replevin for an automobile.

Rule for judgment for want of a sufficient affidavit of defense.

CARR, J., found the facts to be as follows:

This is a suit in replevin, in which the writ was issued August 23, 1915, and an automobile was delivered to the plaintiffs which was found in the possession of the intervening defendant, the Automobile Sales Corporation. The statement alleged that the automobile was brought by the plaintiffs upon July 17, 1915, and that on that same date, the defendants, Sica and Rynone, obtained possession of it under a lease from the plaintiffs, which provided that it was demised to them for the full term of thirty-four weeks, and that they were to pay for the use of it $400 at the time of the signing of the lease and $12.50 to be paid every Saturday for thirty-four weeks. It provided further that in case Sica and Rynone failed to pay the rent or should remove or attempt to remove the leased property from the limits of the city without the consent of the party of the first part, or should fail to surrender up the leased property at the expiration of the lease, or should fail to perform any of the covenants to be performed, then the plaintiffs should have the right to declare the lease void so far as the right of Sica and Rynone were concerned. The statement averred that the plaintiffs defaulted in the payment of the weekly sum of $12.50 upon July 31, 1915. The affidavit of defense and supplemental filed by the Automobile Sales Corporation, intervening defendant, denied that the lease was made in good faith on the part of the pretended lessors,

and that the writing in the form of a lease attached to the plaintiffs' statement was only a cloak or disguise for the really intended transaction, which was that of a sale with an attempted retention of title to secure the balance of purchase-money; and that the plaintiffs did not notify Sica or Rynone of an exercise of and option by the plaintiffs to declare the pretended lease void or require possession of the automobile by Sica and Rynone forfeited, before it was entrusted to the Automobile Sales Corporation, the intervening defendant, for repairs. The affidavit also alleged that on August 17, 1915, Sica and Rynone delivered the automobile to the defendant, the Automobile Sales Corporation and employed it to make certain repairs upon it, "believing them to be, as they had every appearance of being, the owners, said company undertook said repairs and performed them fully, in reliance for proper compensation upon the right of lien upon said automobile for the same." It set forth an itemized statement of the repairs, amounting to $44.41, and claimed that the automobile was subject to a lien for that amount.

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*E. Spencer Miller,* for appellants.—The Automobile Sales Corporation was entitled to trust the automobile for its repair bill, and acquired the right to hold the car to secure payment: McIntyre v. Carver, 2 W. & S. 392; Meyers v. Bratespiece, 174 Pa. 119; Cross v. Knickerbocker, 8 Philadelphia 496; Cadwalader v. Dilworth, 26 W. N. C. 32; Singer Mfg. Co. v. Flenningan, 7 Pa. C. C. R. 45.

*Maxwell Pestcoe,* for appellees.—We submit that while the exact question involved in this case has not been ruled by the Supreme or Superior Court, the case is

ruled by the principles announced in the case of Meyers v. Bratespiece, 174 Pa. 119; and Estey Co. v. Dick, 41 Pa. Superior Ct. 610.

OPINION BY KEPHART, J., March 13, 1917:

Plaintiff leased to Sica and Rynone an automobile for a definite term at a weekly rental. At the expiration of the lease it was to be surrendered "in as good condition as when they took the same (natural wear excepted)." The lessees having defaulted in the payment of rent, the plaintiff seeks to recover the machine through this action of replevin. It was found in the possession of the intervening defendant, who claimed a lien for repairs made at the instance of the lessees.

As a general rule it appears to be well settled that in the absence of statute, or express agreement, a bailor is responsible for extraordinary repairs which inure to his benefit, and which are not caused through the acts or neglect of the bailee, but the bailee must bear the expense of the repairs which are ordinary and incidental to the use of the thing bailed: 6 Corpus Juris 1113. Where the agreement provides that the bailee shall return the article in as good condition as it was when hired, ordinary and natural wear excepted, the expense of necessary repairs made by the bailor after its return may be recovered from the bailee: Woodward v. Cutter, 33 Vt. 49. The lessees cannot recover the expense of a repair: Pacific Bridge Co. v. Riverside Rock Co., 141 Pac. 751. Appellant claims that it, as a repairman, is in no way affected by these rules, and its right to lien is predicated on the common law, which holds that persons have a right to detain goods on which they have bestowed labor until the reasonable charges therefor are paid, although such persons are not obliged to receive the goods for that purpose: 2 Kent 635. It attaches only where the skill and labor expended improve the chattel thereby conferring additional value on it. Such lien arises out of the employment of the workman and belongs to the per-

son who has contracted with the owner to do the work. "In order to charge a chattel with this lien, the labor for which the lien is claimed must have been done at the request of the owner or under circumstances from which his assent can be reasonably implied. It does not extend to one not in privity with the owners": Meyers & Bro. v. Bratespiece, 174 Pa. 119.

There was no express authority from the lessor to the bailee to charge the property for the repairs made, nor was there any contractual relation between the bailor and the defendant in this action. The appellant could not hold the plaintiff personally liable for the bill thus incurred. In seeking to establish its lien it urges that from the use that was to be made of the machine, the lessor knew that to keep the machine in running order repairs would be necessary, and knew it must, as its property, go into the hands of a repairman, so that whatever may have been the contract right between bailor and bailee it would not affect the repairman's right of lien. For these reasons the lessor's assent to the subjection of this property to lien for ordinary repairs can reasonably be implied.

The title to the property was securely lodged in the lessor, and it could not be taken away without its consent. The lease expressly provided that the car was to be returned at the expiration of the term. There is nothing in the language of the lease, nor any fair inference from the language used, which would support any authority in the bailee to impair the bailor's title by handing the property to a repairman, who imposes a lien thereon. The use of the car cannot be made the foundation for authority to subject the property to a lien; there should be more definite evidence of authority coming from the owner. It may arise by implication but the facts from which the inference is to be drawn should be such as to reasonably lead to but one conclusion. The legal relation of lessor and lessee of personal property would take on an aspect not thought of by the parties if

the bailee could create a lien for repair charges against the property, of which the owner would have no knowledge, and could in no way control. If this is one of the incidents to chattels for hire, the title to such property would be held subject by a very unsatisfactory condition into which fraud and imposition might easily find their way. It is true in this case the machine might need repairs, but the owner, if its property is to be charged, should be the judge of where, when and how the repairs should be made.

The repairman cannot say that it is an innocent third party, and the loss should fall on him who made this transaction possible. He stands in no better position than the person who innocently buys, leases, sells or temporarily pledges property that has been stolen. The owner can follow and reclaim it no matter where it may be found. There was nothing to prevent the repairman from demanding and receiving its charges before it entered upon the repair of the machine: Estey Co. v. Dick, 41 Pa. Superior Ct. 610.

We are not convinced that the authorities cited by the learned counsel for the appellant control the question before us. Without discussing whether the quotation from McIntyre v. Carver (1841), 2 W. & S. 392, was obiter, the court says that the bailee "had power by virtue of his contract." We take it to mean from what follows that authority was contained in the instrument. We certainly do not think the court intended that a bailee of a chattel for hire or otherwise should have an unlimited right to charge that chattel with repairs to the undoubted prejudice of the owner of the chattel. As to the authorities cited where a chattel mortgage was under consideration and the title transferred by virtue of the statute to the mortgagee: The mortgagor, who retained the possession and use of the chattel, left it at a repair shop for repairs; he had, at all times, a substantial interest in the subject-matter itself. As was said by Chief Justice GRAY, in Hammond v. Danielson, 126 Mass. 294,

"a means of earning the wherewithal to pay off the mortgage debt" and the increased value of the property by the repair inured to the mortgagor's benefit.   When the mortgagor paid his mortgage he was again the owner of the property.   Authority to charge the property with a lien in such case might be inferred.   We think these cases are easily distinguishable on their facts from the present case.   It is not necessary to discuss all the authorities cited from other jurisdictions.   From the admitted facts in this case, considering all the circumstances surrounding it, we do not think that the bailee had such authority over the bailor's property as would empower it to subject it to the lien of the repairman.

Judgment affirmed.