## National Tire & Rubber Company v. Fiske, etc.

*Bedford, Jones, McGuigan & Waller,* for plaintiff.

*Arthur A. Maguire,* for defendant.

COUGHLIN, J., September 12, 1933.—On or about September 5, 1930, Kuhn & Stacey, defendant, being the owner of a certain Brockway truck, delivered the possession thereof to one C. H. Fiske, under a bailment lease which provided, inter alia: "The lessee agrees that any spare, extra, added, or substituted body equipment or parts, placed on the chattel during the life of this lease, whether because of necessary repairs or otherwise, shall be and become by accession a component part thereof, and included in the term 'chattel' as used herein."

Plaintiff, a Pennsylvania corporation, with its principal place of business in Luzerne County, delivered to the said C. H. Fiske the possession of certain tires and tubes on October 15, 1931, under a bailment lease. Neither plaintiff nor defendant had knowledge of the respective agreements held by the other. The tires were attached by Fiske to the truck in his possession as lessee.

On or about June 6, 1932, Fiske having defaulted in his payments under the bailment lease covering said truck, the defendant took possession thereof, including the tires and tubes belonging to plaintiff but leased to Fiske. Fiske then likewise defaulted on the bailment lease covering the tires and tubes, whereupon the plaintiff took possession thereof by writ of replevin. The defendant now claims the right to said tires and tubes, and seeks judgment in its behalf as against plaintiff to be recovered under the bond in replevin. Upon the aforesaid facts, agreed upon by plaintiff and defendant, it becomes our duty to enter

judgment, either for the defendant in the sum of $543.20 or for plaintiff generally.

Summarizing the facts, Fiske leased the truck under a bailment lease, leased the tires under a similar instrument, and thereupon attached the latter to the former. Did they thereby become the property of the lessor or owner of the truck? We think not. It is true that the agreement upon which the truck was obtained provides: "The lessee agrees that any spare, extra, added, or substituted body equipment or parts, placed on the chattel during the life of this lease, whether because of necessary repairs or otherwise, shall be and become by accession a component part thereof, and included in the term 'chattel' as used herein." But this agreement can be binding but upon the parties thereto. Plaintiff was not a party to that agreement, nor had it any knowledge thereof, and the agreement of Fiske cannot thereby transfer the title of plaintiff's property to defendant.

The law of particular or specific liens on goods in the hands of a tradesman or artisan for the price of work done on them is a part of our common law: M'Intyre v. Carver, 2 W. & S., 392; and as a general rule it appears to be well settled that, in the absence of statute or express agreement, a bailor is responsible for extraordinary repairs which inure to his benefit and which are not caused through the acts or neglect of the bailee, but the bailee must bear the expense of repairs which are ordinary and incidental to the use of the thing bailed: 6 C. J. 1113. This applies to the determining of rights and obligations as between bailor, bailee, and repairman. The present case has to do with the rights of lessors to their respective property bailed to the same bailee. The latter's right in the property which he receives as a bailee or lessee is to be determined by the contract whereby the particular bailed property came into his possession. When lessee or bailee of the tires obtained possession thereof, making periodical payments for the use thereof, his right in respect to that possession and use was circumscribed by the contract of bailment therefor. What, unknown to him, the bailee had agreed upon with another bailor in respect to some other thing bailed had nothing to do with him, and furnished no ground for one bailor to take and possess the property of another bailor.

Most contracts of bailment provide that the bailee shall return the article bailed in as good condition as when hired, allowing for ordinary wear and tear. It is for this reason that the expense of necessary repairs made by the bailor, after its return, may be recovered from the bailee. It is true that, under the common law, persons have a right to detain goods on which they bestowed labor until the reasonable charges therefor are paid. But such a right attaches only where skill and labor expended have improved the chattel and arises only in favor of the person who has contracted with the owner to do the work. To charge the chattel with the lien, the owner's request or circumstances from which assent might reasonably be implied must be shown: Myers et al. v. Bratespiece, 174 Pa. 119.

Under the contract of bailment, of course, the lessor might expressly authorize the bailee to charge the property, and he, the lessor, would be liable afterwards to a third party holding the property under a lien for said repairs. But here we do not have the lessor of the automobile involved in the question of liability to one endeavoring to enforce a lien for repairs, but we have the lessor of the automobile attempting to take the property belonging to the lessor of the tires, because the lessee of the automobile had agreed with the owner thereof that repairs should inure to his benefit. We are unable to see that this involves a lien for labor expended on personal property.

In Stern v. Sica, 66 Pa. Superior Ct. 84, one who had made repairs at lessee's instance upon a leased car claimed a lien for repairs. The court said (p. 88) : "The use of the car cannot be made the foundation for authority to subject the property to a lien; there should be more definite evidence of authority coming from the owner. It may arise by implication but the facts from which the inference is to be drawn should be such as to reasonably lead to but one conclusion. The legal relation of lessor and lessee of personal property would take on an aspect not thought of by the parties if the bailee could create a lien for repair charges against the property, of which the owner would have no knowledge, and could in no way control. If this is one of the incidents to chattels for hire, the title to such property would be held subject by a very unsatisfactory condition into which fraud and imposition might easily find their way."

If this expresses, as it does, the law preventing liens from being made against a lessor's property without his agreeing thereto or knowing thereof, then certainly the lessor's property (as in the present case) could not be transferred, under the guise of a lien, to somebody else without his consent. As was stated in Stern v. Sica, supra, the repairman cannot say that it is an innocent third party, and the loss should fall on him who made this transaction possible. He stands in no better position than the person who innocently buys, leases, sells, or temporarily pledges property that has been stolen. In the case at bar, Fiske could not sell the tires and pass title, nor could he do so by attaching them to a leased car.

Therefore, judgment for plaintiff and against defendant.

From Frank P. Slattery, Wilkes-Barre, Penna.