# Montgomery County Poor District v. Schell

384

*F. Kenneth Moore*, for plaintiff.
*Smillie & Bean*, for defendant.

DANNEHOWER, J., October 17, 1935.—This case arises from an action in replevin for four white-faced steers which had broken into the enclosed lands of the defendant.

On July 12, 1934, the Montgomery County Poor District, the plaintiff, filed a præcipe in replevin, affidavit of value and bond. The following day the sheriff served the writ upon the defendant, and on July 17, 1934, delivered the steers to the plaintiff, the defendant having filed no counterbond. On December 12, 1934, the plaintiff was ruled to file its declaration, and thereafter, on January 18, 1935, a declaration was filed, averring that on July 9, 1934, the plaintiff was the owner of a carload of steers which were being driven by its servants from the railroad station to the plaintiff's premises (presumably upon a public highway, although the declaration fails to state that fact, but only infers it) ; that the steers became scared and stampeded, some straying upon the defendant's premises; that the defendant impounded them and refused to deliver them upon the plaintiff's demand; that the defendant failed to follow the requirements of the Act of June 10, 1931, P. L. 492, relating to the trespassing of livestock upon improved lands; and that the right of possession and title is in the plaintiff.

Defendant filed an affidavit of defense, which did not deny the plaintiff's ownership of the cattle, together with a counterclaim for damages, alleging that as the steers were being driven along a public highway by the plaintiff's servants they became uncontrollable and unman-

ageable, and by reason of the lack of control said steers broke down the fences and buildings upon the defendant's enclosure, trampled upon, consumed and spoiled grass, herbage, standing and growing crops, and came into contact with defendant's cattle, infecting them with certain diseases so that defendant was required to spend sums of money for medical services to treat and cure his cattle and to feed and care for the strays. Defendant claims, therefore, to have a lien for $300 upon the steers replevied by the plaintiff.

Plaintiff's reply to the defendant's counterclaim raises the following defenses: (1) Defendant's right to impound the cattle is governed by the Act of June 10, 1931, P. L. 492, and as he has failed to act thereunder it is now too late to avail himself of its benefits; (2) the counterclaim arises out of a tort and is not a proper set-off in replevin; (3) plaintiff is a municipal corporation, a charitable institution of the county and State, and is not liable for the torts of its servants.

The Replevin Act of April 19, 1901, P. L. 88, provides that a declaration and affidavit of defense shall constitute the issues without other pleadings. In replevin the pleadings are governed by this act and not by the Practice Act of May 14, 1915, P. L. 483, which relates solely to actions in trespass and assumpsit, except libel and slander. The defendant's counterclaim and plaintiff's reply to the counterclaim raising questions of law would not be proper pleadings and on motion would be stricken off, were it not for our Rule of Court 27, which provides as follows:

"In all actions of replevin, in which the defendant does not claim ownership of the property replevied, but claims a lien upon the property or a right therein under distraint for rent, the defendant shall assert such claim in his affidavit of defense, in like manner and form as is required for counterclaims in actions of assumpsit under the Practice Act; and thereafter the same practice and

procedure shall be had as in such actions, and judgment may be entered against the plaintiff for want of a reply or for an insufficient reply, as the case may require."

The right of seizing and impounding stray animals, damage feasant, is as old as the common law. It was declared and given statutory sanction by our Act of April 13, 1807, 4 Sm. L. 472. The right to impound necessarily involves the idea of holding possession of the thing impounded to enforce the performance of some duty, the payment of some debt or the like, by the owner of the chattel. This is but another way of saying that a lien was created against the property: Young v. Couche, 52 Pa. Superior Ct. 592 (1913). The Act of 1807, supra, concerning strays, and all inconsistent acts are repealed by the Act of June 10, 1931, P. L. 492, which has application to the instant case and provides as follows:

"If any person, being either the owner or the tenant of any improved lands within this Commonwealth, shall discover upon his, her, or their improved lands, whether inclosed or not inclosed, any live stock, such person may take up the same; and shall forthwith give notice thereof to the constable of the township, borough or ward in which such lands lie or to any constable of the county, if the constable hereinbefore designated is not available for the purpose at the time, and such constable shall impound such live stock in the possession of the person who originally took up the same or in the possession of some other person, as such constable may deem best, and the reasonable cost of keeping the same shall be part of the costs of the care." (Sec. 2.)

"If the owner of such live stock be known and resides within the county where the trespass has been committed, it shall be the duty of said constable to give written notice to such owner of the fact that such live stock has been impounded, the place where impounded, and the name of the person who has suffered injuries by reason of said trespass, said notice to be served within twenty-four (24) hours after such live stock has been impounded

by such constable, said notice to be served according to any of the methods prescribed by the laws of this Commonwealth for the service of a summons in assumpsit." (Sec. 3.)

"The owner of any live stock impounded under the provisions of this act shall have the right, at any time before the same are sold as hereinafter provided, but not afterwards, either to pay all costs then accrued and the amount of the damages awarded in the appraisement made by the viewers and thereby recover possession of his live stock, or to recover possession thereof by an action in replevin in which the person who took up the live stock and caused same to be impounded shall be defendant; and if the judgment in replevin be for the plaintiff, it shall be conditioned upon the plaintiff paying the amount of damages sustained by the party injured, the cost of keeping the live stock while impounded, and the fees of the constable, the justice of the peace, and the three viewers appointed by the justice of the peace to value and appraise said damages. The verdict of the jury shall itemize such costs, fees, and damages." (Sec. 7.)

Defendant claims that he has a lien upon these animals under the provisions of this act, and that he was prevented from complying with its terms because, on the third day after the cattle were impounded by him, and before he could notify the constable, the plaintiff brought and served its action in replevin. There is authority to the effect that whenever a lien is alleged the case must go to the jury: Evans, Trustee, v. Witman, 10 D. & C. 719.

The act requires that after the livestock has been taken up he shall forthwith give notice thereof to the constable. In determining the meaning of the word "forthwith" it must be noted that in the next section of this act the legislature specified the time (24 hours) within which the constable is directed to notify the owner of the livestock, if he is known. Why did the legislature

use the word "forthwith" and not fix a definite time? "Forthwith" has been variously defined according to the circumstances of each case.

In 26 C. J. 997, it is said:

"The term has been said to be a relative one; an elastic expression. . . . Its import varies with the particular case, and will imply a longer or shorter period, according to the nature of the thing to be done. In its ordinary signification it means immediately; at once . . . as soon as may be; as soon as reasonably can be; as soon as reasonably possible".

In McLain v. Warren, 3 Dist. R. 585, where the question arose under the Swine Act of 1705, 1 Sm. L. 70, the court held that where the record in estray proceedings shows that six days intervened between taking up the strays and notifying the justice the court cannot say as a matter of law that the notice was too late. There, as in the present case, it was contended that the notice came too late, thus invalidating the proceedings, but the court said:

"In 8 Am. & Eng. Enc. of Law, 571, forthwith is defined to mean 'immediately; within a reasonable time; with all reasonable celerity.' In Blackiston v. Potts, 2 Miles, 388, it is said that 'forthwith means with convenient speed and diligence.' The term is relative. Every case must be governed by its own circumstances. It is easy to imagine many things which would excuse a few days delay."

Following these authorities, we cannot say as a matter of law that three days' delay before attempting to give the constable the notice "forthwith" is too long, under the circumstances. The questions whether the plaintiff had a lien and whether the plaintiff, by bringing its action in replevin three days after defendant had taken up the cattle, prevented and made unnecessary defendant's compliance with the Act of June 10, 1931, supra, should be determined by a jury.

As to the plaintiff's second contention that a counter-

claim arising out of a tort is not a proper set-off in replevin, this Act of 1931, quoted above, specially provides for a conditional verdict in accordance with the Replevin Act of April 19, 1901, P. L. 88.

It was well said by Judge Henderson, speaking for the court in Drumgoole v. Lyle, 30 Pa. Superior Ct. 463:

"The Act of April 19, 1901, P. L. 88, does not except from its operation any action of replevin distinguishable from others because of the particular facts out of which it arises. . . . The title; the provisions for giving a bond before the writ goes out; for the service; for the admission of intervening parties; for the filing of a declaration under oath and an affidavit of defense clearly indicate that the statute was intended to provide a convenient practice under which the rights of all parties interested in the property might be worked out."

When the plaintiff brought this action in replevin, it brought the defendant into a court fully equipped with the legal machinery necessary to ascertain not only the fact of ownership, but also the existence of a lien upon the property and the conditions on which that lien with its incidents should be released and its property restored: Young v. Couche, supra.

Concerning plaintiff's third contention, that plaintiff being a municipal corporation is not liable for the negligence of its servants, it is sufficient to say we well recognize the rule of law that the implied common-law liability or nonliablity of a municipal corporation for the torts of its servants depends upon the character of the service they were performing at the time of the injury. If they were acting for the municipal corporation in its corporate or business capacity, the municipal corporation may be held liable. But if they were performing duties of a public or governmental character, there is an immunity from municipal liability. In the present case defendant does not base his claim on negligence, but is seeking to enforce a lien, a right in rem provided by au-

thority of the legislature, which, in giving that authority, did not exempt any owner of the res.

And now, October 17, 1935, for the foregoing reasons, the questions of law raised by the plaintiff's reply to defendant's counterclaim are decided in favor of the defendant. Plaintiff is allowed 15 days from this date in which to file a reply to defendant's counterclaim, as provided by our Rule of Court 27.

From Aaron S. Swartz, Jr., Norristown.