# Estey Company, Appellant, v. Dick.

*Warehouses—Lien for charges—True ownership of goods—Wrongful conversion.*

1. Where a bailee ends the bailment and secretly deposits the chattel bailed in an incorporated storage warehouse, the storage company has no lien for charges for storage as against the real owner, and cannot refuse to return the chattel to the real owner unless the latter pays the charges.

2. If an owner loses his property or is robbed of it, or it is sold or pledged without his consent by one who has only a temporary right to its use, by hiring or otherwise, or a qualified possession of it for a specific purpose, as for transportation, or for work to be done upon it, the owner can follow and claim it in the possession of any person howsoever innocent.

Argued Oct. 14, 1909. Appeal, No. 175, Oct. T., 1909, by

plaintiff, from order of C. P. No. 2, Phila. Co., March T., 1909, No. 3,581, discharging rule for judgment for want of a sufficient affidavit of defense in case of Estey Company v. Mrs. George Dick and Columbia Storage Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Replevin for a piano.

The facts appear by the opinion of the Superior Court.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*Francis Chapman,* with him *S. Spencer Chapman,* for appellant.—Our title to the piano is not in any way denied in the affidavit, nor is there any allegation that Mrs. Dick had any authority or consent to store the piano. Mrs. Dick was a wrongdoer, and no act of hers could transfer our property to someone else or vest in anyone a right greater than ours: McMahon v. Sloan, 12 Pa. 229; Crist v. Kleber, 79 Pa. 290; Miller Piano Co. v. Parker, 155 Pa. 208; Davis v. Bigler, 62 Pa. 242; Dunham v. Lee, 24 Vt. 432; Johnson v. Willey, 46 N. H. 75; Fitch v. Newberry, 1 Dough. (Mich.) 1; Robinson v. Baker, 59 Mass. 137; Stevens v. R. R. Corp., 74 Mass. 262; Clark v. R. R. Co., 75 Mass. 231; Wykoff v. Hotel Co., 24 Mo. App. 382.

*Horace M. Rumsey,* for appellees.—In Pennsylvania, the principle is recognized that a warehouseman is entitled to a lien for its charges, where there is a contractual relation as to storage, between the owner and the warehouseman or storage company, and that this lien is a special lien against the chattels stored: Steinman v. Wilkins, 7 W. & S. 466; Nicolette Lumber Co. v. Coal Co., 26 Pa. Superior Ct. 575.

The plaintiff cannot maintain an action of replevin, without showing either a general or special property, together with the right of immediate possession: Railway Co. v. Ellsey, 85 Pa. 283; Strong v. Dinniny, 175 Pa. 586.

Therefore, when the owner of goods in storage wishes to ob-

tain possession of them, he must first tender the charges due the warehouseman. If he replevies the goods, the warehouseman is entitled to set up a lien for storage charges as against the goods, and the action of replevin will not be permitted until those charges have been paid or until the amount has been tendered to the warehouseman: Mathias v. Sellers, 86 Pa. 486; Brown v. Dempsey, 95 Pa. 243; McIntyre v. Carver, 2 Watts & Sergeant, 392; Hays v. Mouille, 14 Pa. 48; Wood v. Orser, 25 N. Y. 348; Drumgoole v. Lyle, 30 Pa. Superior Ct. 463.

OPINION BY HEAD, J., March 3, 1910:

It is not denied that the plaintiff was the lawful owner of the piano, to recover the possession of which this action of replevin was begun. Nor that Mrs. George Dick had obtained possession of it under a contract of bailment in which she stipulated that she would not "sell or hire the same or part with the possession thereof, or remove it from the premises now occupied by her at 325 Daly St., Phila., Pa." Nor that in violation of her contract she, without the knowledge of the owner, removed from the premises, applied under a fictitious name to the appellee, and thus had the plaintiff's piano taken to and deposited in the storage rooms of the latter. Its location was not discovered by the owner until some months later. Thus it appears that the bailee, by her voluntary act, which as between her and the owner certainly was tortious, if not felonious, had terminated the bailment, and at the time of its deposit had nothing but the naked possession of the piano without any moral or natural right to make any other disposition of it than to return it to the owner.

Not contesting these matters the appellee relies on the propositions that because it is an incorporated storage company, it was bound to receive without discrimination, like a common carrier, the goods of all who offer them; that it received the piano on storage in good faith without knowledge that the depositor was not the owner, and therefore it acquired a lien for the storage charges that accrued which would warrant it in retaining possession, even against the demand of the real owner, until the charges were paid.

Much of the argument advanced by the learned counsel for appellee in support of this theory is conclusively answered by the following excerpt from the opinion of the court in Miller Piano Co. v. Parker, 155 Pa. 208, "Mere possession is at best but evidence, prima facie, of ownership of a personal chattel. It is never conclusive of the title. The reason is that it may result from a purchase, a bailment, or a trespass. The general rule is that one cannot make to his vendee a good title to articles that he does not own. If the possession of the seller is that of a bailee or a trespasser, the rule that declares that where one of two innocent persons must suffer loss the loss should fall on him whose act or omission made the loss possible, does not apply. A bailment for hire makes it possible for a dishonest bailee to sell the goods to an innocent purchaser, but such a sale will not pass the title of the bailor, for he has done or omitted nothing that should estop him from asserting his ownership of the goods. The contract of bailment made it necessary to give possession of the things bailed to the bailee for the special and temporary purposes of the bailment, but the title remained in the owner. The fault in such a case is that of the dishonest bailee."

It is clear, therefore, that the bailee could not by a sale of the piano to the appellee have shaken or disturbed the title of the owner. It is equally certain, under a long line of decisions, that had her execution creditor levied on the piano to satisfy a judgment duly obtained against her for a debt contracted or damages done by her, a purchaser at sheriff's sale would take no title as against the owner because the bailee could not accomplish indirectly what she was unable to do directly. If we apply these principles to the present case without attempting to push them a step beyond their logical conclusion, are we not driven to hold that the bailee in this case could not impose a valid lien on the piano in favor of the appellee or any one else? Because such lien, to be effective, must embrace within it the right and ability to sell the liened property to enforce the payment of the moneys to secure which the lien was created.

It is not argued that the statute authorizing the incorpora-

tion of the appellant company, or any other act of assembly, conferred upon the bailee a statutory right to a lien in a case like the present one. It must and does rely upon the proposition that it has a common-law lien for its storage charges just as a common carrier has for transportation charges. Although the lien of a carrier was earlier and more widely recognized than that of a warehouseman, we may agree that since Steinman v. Wilkins, 7 W. & S. 466, the law of Pennsylvania recognizes the existence of such lien where goods are deposited for safe-keeping by the owner. If the right to such lien be traced to its origin, it will be found that it arises from the contractual relation entered into between the owner of goods and the warehouseman to whom they are bailed for storage, safe-keeping or other special purpose. The learned counsel for the appellee therefore correctly deduces from a number of cases he cites the proposition that, "When the owner of goods in storage wishes to obtain possession of them he must first tender the charges due the warehouseman."

A long step forward, however, must be taken before it can be conclusively asserted that the same relation is created, and the same right of lien exists in favor of the warehouseman even when goods are deposited by one who has no right to or title in them, and whose possession of them is tortious as against the real owner.

It has long been settled that not all of the ancient common law of England was brought with them by the colonists who first settled Pennsylvania. For instance, the doctrine of sales in market overt by which the owner, even of stolen property, might lose his title thereto, has been from the earliest days repudiated by our courts and declared never to have been a part of the common law of Pennsylvania: Hosack v. Weaver, 1 Yeates, 478; Easton v. Worthington, 5 S. & R. 130; Kusenberg v. Browne, 42 Pa. 173. We are not therefore to regard as of the highest authority for us the English cases cited and relied on by the learned counsel for the appellee. It is true these two cases are cited and referred to in the opinion of Mr. Justice KENNEDY in King v. Richards, 6 Whart. 418, but arguendo merely. The question for decision in that case was

whether, where a bailment of goods had been made by a wrongdoer and the bailee, learning of the wrong, had surrendered them on the demand of the real owner, the bailee could, on this ground, successfully defend an action by the bailor for a breach of the bailment? The answer was in the affirmative.

We are led then to inquire to what extent the courts of this country have adopted the fundamental principle that the right of private property in the true owner of it is superior to that of any other, be he purchaser, carrier or warehouseman, whose right has its origin in and follows from the act of one who is tortiously in the possession of the property. It would seem to be apparent that if we are to recognize in such cases the right of lien here claimed, and give to it the normal and necessary incidents to make it effective, we come perilously near reinstating, in effect, the repudiated doctrine of sales in market overt. The correct principle generally adhered to by the courts of last resort throughout the states of the Union is thus declared by FLETCHER, J., speaking for the Supreme Court of Massachusetts, in Robinson v. Baker, 59 Mass. 137, in a well-reasoned opinion analyzing all of the cases, English and American, our own case of King v. Richards among them: "If the owner loses his property, or is robbed of it, or it is sold or pledged without his consent by one who has only a temporary right to its use, by hiring or otherwise, or a qualified possession of it for a specific purpose, as for transportation, or for work to be done upon it, the owner can follow and reclaim it in the possession of any person howsoever innocent." After reciting many instances in which hardship is worked to innocent persons by the operation of this principle, the learned judge goes on: "These are hazards to which persons in business are continually exposed by the operation of this universal principle that a man's property cannot be taken from him without his consent. Why should the carrier be exempt from the operation of this universal principle? Why should not the principle of caveat emptor apply to him? The reason, and the only reason given is that he is obliged to receive goods to carry, and should therefore have a right to de-

tain the goods for his pay; but he is not bound to receive goods from a wrongdoer. He is bound only to receive goods from one who may rightfully deliver them to him, and he can look to the title as well as persons in other pursuits and situations in life. Nor is a carrier bound to receive goods unless the freight or pay for the carriage is first paid to him, and he may in all cases secure the payment of the carriage in advance."

When we view this reasoning in the light of the proposition, established in Pennsylvania, that the bailee in this case could not have made a sale of the piano that would have passed a good title. to the purchaser, it seems to be unanswerable. That this theory of the law prevails generally in our jurisdictions we may sufficiently and with the greatest possible brevity show by quoting from a learned note on the subject appended to the report of the case of Hill v. Denver & Rio Grande R. R. Co., Colorado Supreme Court, in 4 L. R. A. 376: "A carrier acquires no right by virtue of his employment as such to hold the goods delivered to him by a wrongdoer, to whom they did not belong, until his charges are paid, against the claim of the owner, and therefore has no lien upon them: Van Buskirk v. Purinton, 2 Hall, 561; Collman v. Collins, 2 Hall, 569; Stevens v. Boston &.W. R. R. Corp., 74 Mass. 262; Clark v. Lowell & L. R. R. Co., 75 Mass. 231; Gilson v. Gwinn, 107 Mass. 126; Travis v. Thompson, 37 Barb. 236. The universal and fundamental principle of the law of personal property is that no man can be divested of his property without his own consent, and that even an honest purchaser under a defective title cannot hold against the true proprietor. The only exception to this rule in ancient English jurisprudence was that of sales in markets overt; but in this country the law of markets overt has not been adopted (citing many cases). If a carrier gets property from a person not authorized to direct its shipment, it has no lien for its services and no right to retain the property: Pingree v. Detroit L. & N. R. R. Co. (Mich.), 9 Western Rep. 703."

That the question is of considerable importance in the transaction of modern business cannot be denied. But the argument ab inconvenienti may be largely answered by the

exercise of the unquestioned right by warehousemen to demand or secure in advance their storage charges. Looking at the whole question in all of its aspects as broadly as we can, we feel we are but declaring the conclusion that results from the basic principles of the cases we have, and following the general trend of judicial decision in this country, in holding that the storage company in this case has exhibited no right to retain the possession of the piano to enable it to collect from the real owner the storage charges which followed its receipt of the property from one who was a wrongdoer and had no rightful possession of it at the time it was deposited.

The order of the learned court below discharging the rule for judgment is reversed and set aside, the rule is reinstated, and the record is remitted to the court below with direction to enter judgment against the defendants for such sum as to right and justice belong unless other legal or equitable cause be shown to the court below why such judgment should not be so entered. The costs of this appeal to be paid by the appellee.