Commonwealth *v.* Two Ford Trucks (et al., Appellant).

Argued November 11, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Clair V. Duff,* with him *Lawrence P. Nelson, W. Louis Schlesinger,* and *Duff & Doyle,* for appellant.

*Roger M. Brown,* with him *Wendell R. Good, Frederick F. Jones, Herbert J. Johnson, Jr., Gifford, Graham, MacDonald & Illig,* and *Evans, Johnson, Scarpitti & Bernard,* for appellee.

OPINION BY ERVIN, J., January 21, 1958:

On November 23, 1954 and July 6, 1955 Harris Ford, Inc., (as bailment-lessor) entered into two separate written bailment lease agreements for two Ford trucks with Thomas McDivitt[1] (as bailment-lessee). On November 30, 1954 and July 9, 1955, respectively, Harris assigned said bailment leases to appellant, Universal C. I. T. Credit Corporation (hereinafter referred to as U.C.I.T.), for value. On September 16, 1955 McDivitt was operating these trucks while they

---

[1] Improperly spelled "McDivatt" in the record.

were overloaded near the City of Corry, Erie County, Pennsylvania, as a result of which he was arrested and was given a hearing before an alderman. McDivitt was convicted and fined $1,020.00 under the terms of The Vehicle Code, as amended by the Act of June 30, 1955, P. L. 225, §5, 75 PS §453. McDivitt failed to pay the fine and the alderman notified the sheriff of Erie County, who seized the trucks and caused them to be impounded at the M. V. Irwin Moving and Storage Company in Erie, Pennsylvania. At the time of the illegal use, of which U.C.I.T. had no knowledge, McDivitt was in default in payment of rentals due under the leases. On September 13, 1955 McDivitt was in the office of U.C.I.T. and said he would pay the past due instalments on September 19, 1955. He was told that if he did not pay on September 19, U.C.I.T. would repossess the trucks. On September 17, 1955 McDivitt told U.C.I.T. Manager James E. Weaver that the trucks had been seized by the sheriff. This was the first time that U.C.I.T. had knowledge of the violation of September 16, 1955. At all times the certificates of title issued for said trucks by the Bureau of Motor Vehicles of the Commonwealth of Pennsylvania named Thomas McDivitt as the owner. The only encumbrance noted on the certificates of title were in favor of U.C.I.T. in the total amounts of the bailment-lease rentals. On November 18, 1955 the sheriff informed U.C.I.T. that the trucks were to be sold on November 28, 1955. U.C.I.T. filed a petition in the court below praying for an order to stop the sale and for delivery of the trucks to U.C.I.T. In its petition U.C.I.T. averred: "3. That your petitioners hold legal title to the aforementioned trucks, there being due and owing to your petitioners the amount of $3,413.18 on truck bearing serial number F60Z5B10249, said balance due resulting from a bailment lease contract

dated the 23rd of November, 1954, under which contract your petitioners obtained legal title, and, there also being due and owing to your petitioners the amount of $2,901.47 on truck bearing serial number F60Z5B16361, said balance due resulting from a bailment lease contract dated the 6th of July, 1955, under which contract your petitioners obtained legal title.

"4. That Thomas McDivatt, lessee of said trucks is not the lawful owner thereof but that your petitioners are now the lawful owners, said Thomas McDivatt having failed to comply with the terms of said bailment lease contract."

In the prayer of the petition U.C.I.T. requested that the trucks be delivered to it "in accordance with the provisions contained in PL263 of July 3, 1941 (75 PS Sec. 1291.5 (6)) which same is controlling." On December 2, 1955 the court below entered an order directing that the trucks be returned to U.C.I.T. On December 3, 1955 the court below entered a new order vacating the previous order and scheduling a second hearing. At the second hearing held on December 6, 1955, the sheriff, on behalf of M. V. Irwin Moving and Storage Company, claimed storage charges of $20.00 per day, or a total sum of $2,940.00 for both vehicles. On December 9, 1955 Parlette & Davis filed a petition to intervene in which they alleged that they were the owners of four tires on one of the trucks under a lease agreement; that the lessee was in default and that the rental balance due them was $292.93. No encumbrance in favor of Parlette & Davis was recorded on the certificate of title for either truck. On January 30, 1956 the court below ordered the sale of the trucks and the substitution of the fund derived therefrom in lieu of the trucks. On October 18, 1956 the court below filed its opinion and distributed the fund of $2,725.00 obtained from the sale of both trucks. That order di-

rected payment of $292.93 to Parlette & Davis and payment of the balance of the fund, $2,432.07, to the sheriff for his costs, the storage company for storage charges and the City of Corry for its fines and alderman's costs, the payees to pro rate these fines and the various costs. That order made no mention of appellant's recorded encumbrances. On May 23, 1957 the court below dismissed appellant's exceptions and on May 28, 1957 the court below ordered that the trucks were sold free and clear of all encumbrances and directed the Bureau of Motor Vehicles of the Commonwealth to remove any encumbrances noted on the titles to the said vehicles. The only encumbrances so recorded were in favor of appellant. This appeal was then taken from the final orders of the court below dated May 23 and May 28, 1957.

The entire proceeding is based upon The Vehicle Code. We are concerned primarily with the penalty portion of §5 of that act[2] which reads as follows: "In case any vehicle . . . shall remain unredeemed, . . . for a period of 60 days after notice of impoundment is given as aforesaid, the same shall be deemed to be abandoned and shall be disposed of by the Sheriff . . . in accordance with the procedures outlined in Section 4 of the Act [of July 3, 1941, P. L. 263, 75 PS §1291.4] . . . And provided further, That the proceeds of such sale *after the payment of encumbrances* shall be applied to the payment of fine and costs and the balance thereof shall be remitted to the owner . . . ." (Emphasis added) The Act of 1941 pertains to the forfeiture and condemnation of vehicles in which narcotics are stored, contained or transported. Section 4 of that act, which is incorporated into the 1955 act, provides for the seizure, condemnation and public sale of any

_____

[2] Act of June 30, 1955, P. L. 225, §5, 75 PS §453(h).

vehicle used to transport narcotics. The portion of §4 of the 1941 act with which we are primarily concerned is as follows: "In the event that any such vehicle is, when so seized, held and possessed, under a bailment lease or contract and the legal title thereto is in another person, or in the event that any such vehicle is, when so seized, subject to the lien of a chattel mortgage or to a contract of conditional sale, and if the person holding the legal title thereto or holding such chattel mortgage or contract of conditional sale thereon shall prove that the unlawful use for which the same was seized was without his knowledge or consent, then the claim of the bailor for money due under said bailment lease or contract or the claim of the mortgagee or conditional seller for money due under said chattel mortgage or contract of conditional sale shall attach to and be paid out of the funds derived from said sale *after payment of costs* and the balance distributed as above provided." (Emphasis added) In awarding the sum of $2,432.07 to the sheriff for his costs, the storage company for storage charges and the City of Corry for its fine and alderman's costs, the court below ignored the appellant as an encumbrancer on each truck. To accomplish this result the court below said that §5 of the Act of 1941 had been incorporated into the Act of 1955. The court below said: "In construing the relationship of these two statutory enactments we feel that the incorporation of the Act of 1941, P. L. 263, into the 1955 Amendment by reference had relation only to the procedure relative to sale which was to attach and not to the disposition of the proceeds of the sale involved as each of the acts has its own dispositive clause. If we are correct in this interpretation then it is important to bear in mind that Section 5 of the Act of 1941 specifically makes the procedure of that Act 'in rem'. In this situation what

our Superior Court said on Commonwealth v. Beloff, 166 Pa. Superior Ct. 291, becomes significant: 'And under statutes in which the prescribed proceeding to enforce the forfeiture is in rem, the automobile itself is regarded as the offender, and the true owner's knowledge of, or consent to, or participation in, the acts which constitute grounds for the forfeiture, is not essential. 37 C.J.S. Forfeitures, §25; 23 Am. Jur., Forfeiture and Penalties, §§6 and 7.'

"In passing it must also be noted that the 1955 Amendment specifically differs from the Act of 1941, P. L. 263, in the matter of the disposition of the proceeds of the condemnation sale in that the 1955 Amendment says that the same '. . . shall be applied to the payment of fine and costs and the balance thereof remitted to the owner' whereas the earlier Act (1941) simply makes reference to disposition '. . . from said sale after payment of costs.', making no mention of the payment of fine. Having in mind the time-honored maxim, 'Specialia generalibus derogant', and the further fact that a later specific statute impliedly repeals a prior inconsistent one, we are constrained to the view that, therefore, the fund before us for distribution must be disposed of in accordance with the dispositive provision of the late amendment." This interpretation ignores the fact that §4 of the 1941 act was specifically incorporated into the Act of 1955, and that §5 of the 1941 act, which deals with the "in rem" feature, was not. The court below further stated that appellant was an owner rather than an encumbrancer because the appellant, in its original petition to the sheriff, averred that it held legal title to the aforementioned trucks and that it was "now the lawful owner, said Thomas McDivatt having failed to comply with the terms of said bailment-lease contract." It also said that appellant could not occupy the dual position of

owner and lienor and that "If it is the owner and claims as such then its lien would be merged in its ownership. Hence, we say that this claimant, coming upon the record and unequivocally standing on its position of legal ownership as between the contesting parties in the case at bar, must take the consequences of the assumption of that legal position and the 1955 Amendment clearly relegates it to the balance after 'the payment of fine and costs.' Therefore the claim of C. I. T. Corporation, being so postponed, cannot participate in the funds because the prior claims will exhaust the same."

The Act of 1955 under which these proceedings were held is a part of The Vehicle Code, §2 of which defines "owner" as follows: " 'Owner'.—A person . . . holding the legal title of a vehicle; or, in the event a vehicle is the subject of a . . . lease thereof or other like agreement, with the right of purchase upon performance of the conditions stated in the agreement, and with an immediate right of possession vested in the . . . lessee, then such . . . lessee shall be deemed the owner for the purpose of this act."

The Motor Vehicle Sales Finance Act of June 28, 1947, P. L. 1110, 69 PS §601, provides in §3 (69 PS §603), Definitions: " 'Security interest' shall mean any property right in the motor vehicle which is the subject of an installment sale contract, whenever such right is retained, to secure performance of any obligation of the buyer under such contract, . . . and the term shall include any lien or encumbrance against such motor vehicle . . . and any reservation of title to such motor vehicle, whether or not expressed to be absolute, whenever such title is in substance retained for security only."

The Uniform Commercial Code of the Commonwealth, the Act of April 6, 1953, P. L. 3, 12A PS §1-101,

provides (in §9-102) that art. IX of the Code (Secured Transactions) applies to transactions in the form of pledge, assignment, chattel mortgage, chattel trust, deed trust, factors lien, equipment trust, conditional sale and bailment-lease. Under §9-107 of that Code, U.C.I.T., the appellant, would be specifically labeled as the holder of a purchase money security interest in these trucks.

The gravamen of all these statutes is that the legislature is giving expression to the fact that instalment-selling has been carried on in Pennsylvania by the use of the bailment-lease device. This device was first used because there were no recording statutes in Pennsylvania and some method had to be provided to protect the merchant who was selling goods on an instalment-payment basis. In addition, bailment-lessors benefited by the penal acts relating to larceny-by-bailee.

All of these acts of the legislature recognize the fundamental distinction between the goods themselves and the property in the goods. This distinction was made in the former Sales Act, now supplanted by the Sales Act sections of the Commercial Code. The same distinction was made and enforced under the Uniform Conditional Sales Act, now repealed in this Commonwealth.

In essence, the distinction separates property or title in the goods from the goods themselves. Then, the "bundle of rights"—labeled "title"—is divided into security title and beneficial ownership. Here the bailment-lease is used as the security device; the bailment-lessor having security title and the bailment-lessee having the beneficial ownership and use of the goods.

Regardless of the type of security device used (with the possible exception of the chattel mortgage), wheth-

er a conditional sale or any of the other types of security devices mentioned in the Uniform Commercial Code in §9-102, the holder of the security interest in the goods retains title in the abstract where a purchase-financing transaction is entered into as distinguished from a loan-financing on goods where the chattel mortgage device would be used. The interpretation which the legislature has adopted for the word "owner" is the same interpretation which this Court has placed upon that word: *Atlantic Finance Corp. v. Kester*, 156 Pa. Superior Ct. 128, 39 A. 2d 740.

Every bailment-lessor who has recorded his encumbrance is an owner for certain purposes and an encumbrancer for certain other purposes. Appellant's ownership is qualified, not absolute. It is composed of certain rights in the "total bundle of rights" labeled "ownership". Appellant has the naked legal title to the trucks. It may repossess after default and if proper notice is given under the terms of the Motor Vehicle Sales Finance Act, it may expand its bailment-lessor status into the status of a full, absolute and unqualified owner. While the bailment-lessee has possession and the right to use and enjoy the goods, appellant's status is that of the holder of a security interest or security title only, and when that security title or interest is recorded on the certificate of title, appellant is an encumbrancer of the vehicle. In the present case the appellant had not repossessed or instituted any other action in an effort to fulfill the statutory requirements to acquire absolute ownership and therefore it was not vested with full ownership. On September 16, 1955, when the violation occurred, the lessee was in possession of the trucks. He had been given until September 19, 1955 to make payment of the instalments which were in arrears. He had been warned

that if payment was not made on September 19, the lessor would repossess the trucks. Naked legal title remained in the appellant down to and including the day, September 16, when the trucks were seized by the sheriff for the payment of fines, costs, etc. The court below was in error in asserting that appellant's interests merged. In the case of vehicles covered by the Motor Vehicle Sales Finance Act, not only is a merger a matter of intention, it is a matter of taking certain positive actions to effectuate it. Appellant must comply with the provisions of that act relating to repossession, notice to lessee, sale, etc., before it can unite the interests of the bailment-lessee as beneficial owner with its own security title as bailment-lessor, which together make up the legal concept "absolute ownership". That act[3] provides: "A. When the repossessed motor vehicle under an installment sale contract is not redeemed by the buyer either by termination or reinstatement of the contract within the fifteen (15) day notice of redemption period, the buyer shall forfeit all claim to such motor vehicle and collateral security."

The giving of a first lien to Parlette & Davis on one of the trucks for the tires which it had furnished under a bailment lease was clearly error. Parlette & Davis could not have a valid encumbrance upon the truck because no such encumbrance had been noted on the certificate of title. The encumbrances in favor of the appellant were the only ones noted on the certificates of title for the two trucks.

The orders of the court below dated October 18, 1956 and May 23, 1957 are reversed and, since the entire amount realized at the sale—$2,725.00—is less than the balances due on the appellant's encumbrances, an order is now entered directing the sheriff of Erie

---

[3] Act of June 28, 1947, P. L. 1110, §26, 69 PS §626.

County to pay the entire proceeds of the sale to the appellant.