## 46695. INTERNATIONAL HARVESTER CREDIT CORPORATION v. COMMERCIAL CREDIT EQUIPMENT CORPORATION.

EBERHARDT, Judge. This is a Uniform Commercial Code case involving conflicting security interests in the same collateral. On September 8, 1967, one Miller purchased from Farmers Implement Company (hereafter "dealer") an International model 57B skidder or paylogger, a piece of logging equipment used by loggers or pulpwood operators in their business. As part consideration, Miller executed a combination instalment note and "Purchase Security Agreement" in the amount of $15,342.84. The agreement bore the initial heading of "Commercial Credit Equipment Corp." (hereafter "CCEC"); listed Miller as the debtor-buyer and the dealer as the secured party-assignor-seller; and provided that title should not pass to Miller until all sums due under the agreement were fully paid. It was further provided that the agreement and the dealer's interest would be offered to CCEC for discount; that Miller was to make all payments to CCEC; that CCEC would be entitled to all rights of the dealer; that the dealer and CCEC would have all the rights of a secured party under the Uniform Commercial Code; and that Miller would not conceal the skidder, remove it from the state, or transfer any interest therein

without the written consent of the holder of the security agreement. According to a notation on the agreement, the skidder was delivered to Miller on September 8, the date of the agreement; and also on the same date the dealer assigned the agreement to CCEC for new value. On September 12, four days later, CCEC recorded a copy of the agreement, which is stipulated to be valid as a financing statement, in the clerk's office of the Superior Court of Jones County, the county of Miller's residence.

In some fashion, unknown to the parties on appeal, one Lewis obtained possession of the skidder and on June 9, 1969, traded it back to the dealer as part purchase price on a new skidder. International Harvester Credit Corporation (hereafter "IH"), a subsidiary of International Harvester Company, Inc., financed the sale of the new skidder from International Harvester Company to the dealer for resale to Lewis, taking from the dealer as part payment for the new skidder a note secured by a chattel mortgage on the old skidder traded in by Lewis.

CCEC received payments on the old skidder through August 7, 1969, all of which were made by Miller, the original purchaser, except the payments of March 31, June 28, and August 7, which were made by the dealer. Between March 31 and August 7, Miller made two payments by check, one of which was returned by the bank. There was testimony that it was customary for CCEC to receive payments through dealers in the normal course of business as, for example, when pulpwooders visit the dealer for some purpose, think of a payment coming due and make it while there, which the dealer then sends to CCEC. There was further testimony that on April 28, 29 and 30, after the dealer had made the first payment to CCEC on the Miller account, representatives of CCEC saw the skidder in Miller's possession, and that in this type business if the lender becomes suspicious because of a dealer payment, the suspicions are satisfied if the equipment is found in the possession of the purchaser.

On August 8, 1969, the dealer filed a petition in bankrupt-

cy, and on August 11, IH repossessed the old skidder from the dealer, the latter being in default on its note to IH. The August 7 dealer's check to CCEC was returned by the bank for insufficient funds, and the present litigation arose when CCEC filed its trover complaint against IH, seeking to recover the old skidder and the value of its hire.[1] At all times pertinent to this action both IH and CCEC had on file in the proper place financing statements covering the dealer's inventory, with IH having the older financing statement of record.

The trial court, sitting without a jury, awarded the old skidder to CCEC, along with a money judgment for $7,000 representing the hire of the equipment from the date of conversion to the date of trial. IH appeals. *Held:*

1. Under the circumstances of this case CCEC acquired a "purchase money security interest" as to the old skidder ((*Code Ann.* § 109A-9—107 (b); Comment 1 to UCC § 9-107 (1962 Official Text); Gilmore, The Purchase Money Priority, 76 Harv. L. Rev. 1333, 1373; accord: National Shawmut Bank v. Vera, 352 Mass. 11 (223 NE2d 515); Citizens Nat. Bank v. Sperry Rand Corp., (Tex. Civ. App.) 456 SW2d 273; Commonwealth v. Two Ford Trucks, 185 Pa. Super. 292 (137 A2d 847)); and, by perfecting (*Code Ann.* §§ 109A-9—302; 109A-9—401 (1) (b)) within ten days of the date Miller received possession of the skidder, which the trial court was authorized to classify as "collateral other than inventory" (*Code Ann.* § 109A-9—109), the purchase money security interest of CCEC has priority over any conflicting security interest of IH as to the skidder. *Code Ann.* § 109A-9—312 (4). IH argues that by taking the chattel mortgage on the skidder it was a buyer in the ordinary course of business from the dealer so as to take free of CCEC's security interest under either *Code Ann.* §§ 109A-9—307 (1) or 109A-2—403 (2). However, since IH received only a

---

[1] The skidder has been abandoned by the trustee and District Court as burdensome to the bankrupt's estate.

security interest for a money debt, it is not a "buyer in ordinary course of business." *Code Ann.* § 109A-1—201 (9). Cf. *Commercial Credit Corp. v. C. & S. Nat. Bank.* 68 Ga. App. 393 (23 SE2d 198). Consequently, since the trial court was authorized to find that Miller made an unauthorized disposition of the skidder, CCEC's purchase money security interest continued in the skidder in the hands of the dealer and IH, and CCEC was entitled to prevail in its action for conversion. *Code Ann.* § 109A-9—306 (2); Comment 3 to UCC § 9-306 (1962 Official Text). Accord: National Shawmut Bank v. Jones, 108 N. H. 386 (236 A2d 484).

2. IH argues that CCEC, by accepting payments from the dealer who had no authority to accept collections under terms of the assignment, did not make prompt nonpayment inquiries of the customer and impliedly consented in allowing the skidder to come back into the hands of the dealer, so that the equitable principle with respect to "which of two innocent persons shall bear loss" (*Code* § 37-113) has application to defeat CCEC's claim. Assuming arguendo that the Code section might have application on the basis urged, the evidence was sufficient to authorize the trial court to find that CCEC made proper inquiry under the facts of the case and the customs of the trade.

3. While not compelling and in some particulars weak, the evidence was sufficient to support the award of $7,000 as the reasonable hire of the property for the 23-month period of conversion.

*Judgment affirmed. Hall, P. J., and Clark, J., concur.*

ARGUED NOVEMBER 3, 1971—DECIDED JANUARY 13, 1972—REHEARING DENIED FEBRUARY 11, 1972.

*Lawton Miller, Jr.,* for appellant.

*Mullis, Brown & Reynolds, S. Phillip Brown,* for appellee.