417 A.2d 604
## ASSOCIATES FINANCIAL SERVICES COMPANY, INC.
v.

William F. O'DELL and Mary E. O'Dell, his wife, and A. G. Turley, Individually and t/d/b/a A. G. Service, Appellants.

Supreme Court of Pennsylvania.

Submitted March 4, 1980.

Decided July 3, 1980.

Armand R. Cingolani, Jr., Cingolani & Cingolani, Butler, for appellants.

Reed J. Davis, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This case involves the common law doctrine of possessory liens.[1] On March 25, 1975, appellants William F. and Mary E. O'Dell purchased a tractor from Anderson Sales Service, Inc. under an installment sales contract and security agreement. The contract and agreement were then assigned to appellee Associates Financial Services Company, Inc. In February 1976, William O'Dell drove the tractor in the course of business to Texarkana, Texas where it became disabled. O'Dell requested appellant A. G. Turley, whose business in Zelienople, Pennsylvania included truck towing, repairs, and storage, to drive to Texas and haul the tractor back to Pennsylvania. Turley complied with this request, incurring expenses of $2,772.

Meanwhile the O'Dells defaulted on the payments owed Associates under the installment sales contract. Associates, finding the tractor in Turley's possession, brought this action in replevin against Turley and the O'Dells. Turley counterclaimed that he was entitled to a possessory lien on the tractor for expenses incurred in hauling and storing the tractor. The trial court awarded Associates possession of the tractor, but granted Turley a possessory lien on the tractor for the claimed expenses of $2,772. The Superior Court, 262 Pa.Super. 584, 396 A.2d 1324, reversed the trial court in part, holding that a possessory lien was not validly

1. The Uniform Commercial Code does not govern the determination of common law possessory liens. See Comment to Section 9–310.

4

imposed upon the tractor because Associates never consented to Turley's services. We agree and accordingly affirm.[2]

■ "[I]t is a well-settled principle of the common law that he who by labor, skill, or materials adds value to the chattel of another . . . has a possessory lien thereon for the value of his services and may retain the chattel in his possession until the same be paid." Brown on Personal Property 394–95 (3rd ed. 1975); see, e. g., *Saxton v. Gemehl*, 72 Pa.Super. 177 (1919). At its inception, the common law possessory lien was restricted to those circumstances where a lien creditor rendered his services upon the implied promise of the debtor to repay him. Since the action of assumpsit was not recognized at early common law, the possessory lien provided such creditors an extrajudicial remedy to collect their debt. Consistent with this limited purpose, the lien did not arise where the creditor had an action at law upon an express contract. When the action of assumpsit on contracts implied in fact became available, however, the possessory lien was not abolished, but for reasons which are not clear was instead extended to creditors under express contracts. See Brown on Personal Property, supra at 394.

■ Possessory liens are fundamentally consensual in nature, arising from an agreement, either express or implied, between the owner of the goods and the artisan who renders services for those goods. See, e. g., *Younger v. Plunkett*, 395 F.Supp. 702, 707 (E.D.Pa.1975) (interpreting Pennsylvania law). That possessory liens arise exclusively in the context of express or implied consent is long established in the jurisprudence of this Commonwealth. As this Court stated in *Meyers & Bro. v. Bratespiece*, 174 Pa. 119, 121, 34 A. 551, 551 (1896) (quotation omitted):

"Whenever a workman or artisan by his labor or skill increases the value of personal property placed in his possession to be improved he has a lien upon it for his proper charges until paid, but in order to charge a chattel with this lien, the labor for which the lien is claimed must

2. This case was reassigned to this writer on April 16, 1980.

have been done at the request of the owner or under circumstances from which his assent can be reasonably implied. It does not extend to one not in privity with the owners."

See *Estey Co. v. Dick*, 41 Pa.Super. 610 (1910); *Stern v. Sica*, 66 Pa.Super. 84 (1917); *Hecht v. Valkone Dye & Finishing Works*, 66 Pa.Super. 97 (1917); *Bankers' Commercial Security Co. v. Brennan*, 75 Pa.Super. 199 (1920); *Leitch v. Sanford Motor Truck Co.*, 279 Pa. 160, 123 A. 658 (1924); *Automobile Finance Co. v. Markman*, 82 Pa.Super. 478 (1924); *Midland Credit Co. v. White*, 175 Pa.Super. 314, 104 A.2d 350 (1954); R. E. Lee, *Power of Possessor of Personal Property to Create Lien for Repairs and Storage Charges Superior to Existing Interests of Others*, 90 U.Pa.L.Rev. 910, 922–28 (1942); see also *Welded Tube Co. v. Phoenix Steel Corp.*, 377 F.Supp. 74 (E.D.Pa.1974) (interpreting Pennsylvania law); *Younger v. Plunkett*, supra.

■ There is nothing in this record to suggest that Associates expressly consented to appellant Turley's towing and storage services.[3] So too, nothing in the circumstances of this case suggests implied consent on the part of Associates. Associates obtained a security interest on the tractor to protect its loan from other creditors of the O'Dells, as well as from default by the O'Dells. Surely such circumstances do not support a conclusion that Associates authorized the O'Dells to encumber Associates' secured interest. Rather, they suggest that Associates intended that the O'Dells personally incur the expenses necessary to the maintenance of the tractor and thereby allow Associates to retain its security unencumbered. Additionally, at the time Turley entered the contract with the O'Dells, the disabled tractor did not pose a threat to the public welfare and Turley had ample opportunity to check the financial status of the tractor and

3. Appellant Turley now, for the first time, claims in his brief that he remembers that Associates expressly consented to his services. In light of the dilatory presentation of this new theory, we must consider appellant's new claim waived. See, e. g., *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

6

arrange an appropriate method of payment.[4]  Appellant Turley is therefore not entitled to a possessory lien on the tractor.

This holding does not unfairly dispose of appellant Turley's claim of monies owed for services rendered.  When the O'Dells breached their contract with Turley, he could have sued them for contract damages.  Further, our conclusion is consonant with the recognized importance of the free flow of credit to consumer and business transactions.  "The commercial customs of to-day do not favor the tying up of personal property by liens; and, if the courts should now countenance any such general attitude toward the credit system  .   .  ., business, as that term is presently understood, would soon come to a standstill."  *Welded Tube Co. v. Phoenix Steel Corp.*, 512 F.2d 342, 345 (3rd Cir. 1975), quoting *Mitchell v. Standard Repair Co.*, 275 Pa. 328, 332, 119 A. 410, 411 (1923);  see R. E. Lee, *Power to Create Lien*, supra at 927.  Accordingly, the order of the Superior Court must be affirmed.[5]

Order affirmed.

FLAHERTY, J., joined by LARSEN, J., files a dissenting opinion.

4.  In Pennsylvania, the notation of a security interest against a vehicle must appear on the certificate of title.  75 Pa.C.S. § 1106(a).

5.  The parties do not dispute that Associates is an "owner" of the tractor for purposes of a common law possessory lien.  "Ownership of property" or "property" does not denote the chattel itself, but rather means the "bundle of rights" inhering in a person's relation to the chattel.  See *Commonwealth v. Two Ford Trucks,* 185 Pa.Super. 292, 300, 137 A.2d 847, 852 (1958);  accord *United States v. General Motors Corp.,* 323 U.S. 373, 377–78, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945).  Whatever name is used to refer to the various possible interests in a chattel, it remains true that those people with substantial interests in a chattel have property rights, or ownership, in that chattel for specific purposes.  Accord *Commonwealth v. Two Ford Trucks,* supra, 185 Pa.Super. at 301, 137 A.2d at 852 ("Every bailment lessor  .   .   . is an owner for certain purposes.  .   .   .")

For a time, motor vehicles were sold on credit in Pennsylvania under bailment leases.  See generally Motor Vehicle Sales Finance Act, Act of June 28, 1947, P.L. 1110, § 2, 69 P.S. § 602.  More recently, these sales have occurred under installment contracts and

FLAHERTY, Justice, dissenting.

I respectfully dissent from the majority's opinion. The clear result of the opinion announced today is that whenever a person takes his vehicle to a service garage for maintenance or repair, the garageman, in order to insure his right to assert a common-law possessory lien in the event that the work is not paid for, will be required to determine whether there is a security interest against the vehicle, and if so, he will then have the task of seeking permission from the secured party to perform the work. This approach is unreasonable and impractical. To say, as the majority does, that the garageman has a contract action against the non-paying customer, ignores reality. Further, if the garageman keeps possession of the car after the work is completed, the customer who will not pay presumably has an action in conversion or replevin against the garageman. This result is unjust.

To say that the garageman can protect himself by checking the title for indebtedness is commercially unrealistic. While it is true that in Pennsylvania there is an indication of encumbrance on the certificate of title, it is highly unusual for drivers to carry with them their certificates of title. In fact, if there is a security interest, the secured party most

security agreements. See 69 P.S. §§ 601 et seq.; Uniform Commercial Code—Sales, Act of October 2, 1959, P.L. 1023, §§ 2 et seq., 12A P.S. §§ 2–101 et seq. Though the names of the transactions and the specific rights of parties have changed with time, it is still undeniably true that a creditor like Associates has a very substantial interest in the tractor. Given Associates' objectives in acting as the O'Dells' creditor, as well as reasons of public policy, it is only common sense to consider Associates an "owner" for purposes of common law possessory liens, and thus require Associates' consent to the establishment of such a lien on the tractor.

We note that the definition of owner in the Motor Vehicle Code, 75 Pa.C.S. § 102, is inapposite here. It is hornbook law that the meaning of "owner" will vary according to its context and the circumstances of its use. See, e. g., *Douglas v. Pratt*, 102 R.I. 445, 447–48, 231 A.2d 486, 488 (1967); *Petition of Brandt*, 241 Minn. 180, 185–86, 62 N.W.2d 816, 820 (1954); *General Realty Impt. Co. v. New Haven*, 133 Conn. 238, 239–41, 50 A.2d 59, 60 (1946). This case is not centrally concerned with the Motor Vehicle Code, but rather with the common law doctrine of possessory liens, two bodies of law whose purposes and developments are rather distinct.

likely holds the certificate of title. If the owner, for whatever reason, then, does not have the title accessible, the garageman will not readily be able to determine the existence or non-existence of a security interest. Even if the title is accessible and the secured party has been identified, but has multiple offices, which office does the garageman call? And if he calls, what constitutes legal authority for him to proceed with the work? Is the telephone call adequate? If so, with whom must he speak?[1]

Thus, the majority's approach not only makes it difficult for the small businessman to assert his common-law rights against a delinquent customer for whom he has rendered services, but also sidesteps the central question in this case: "Who is the owner?" The reason that this question is central is that, as the majority states, the law in Pennsylvania is that a common-law possessory lien arises when an artisan renders services affecting another's goods at the request or permission of the owner of the goods. The majority, for reasons not explained, and contrary to the Vehicle Code, determines that O'Dell is not the "owner" of the truck. The Vehicle Code provides at 75 Pa.C.S.A. § 1133, Act of June 17, 1976, P.L. 162 No. 81 § 1:

[1]. In a 1942 law review article cited by the majority, the writer, dealing with the problem of how a repairman determines whether an owner has authorized a bailee to create a lien on the bailment property, writes:

> A rule that requires a repairman to search the chattel mortgage and conditional sale recording statutes prior to the doing of any repairs would work a tremendous hardship upon repairmen. A repairman would have to either demand costs in advance (something that cannot always be determined in advance) or at a great inconvenience to himself and the person in possession search the records for either a chattel mortgage or conditional sale. The burden would be far greater to a mechanic than to a purchaser from, or creditor of, the party in possession. Sales and execution proceedings usually are not required to be carried through with the speed of repairs; for example, repairs to an automobile.

Lee, "Power of Possessor of Personal Property to Create Lien for Repairs and Storage Charges Superior to Existing Interest of Others." 90 U.Pa.L.Rev. 910, 917 (1942). As indicated, supra, similar concerns apply where a repairman is required to determine whether a security interest exists and then to get permission to proceed from the secured party before performing any work.

If an owner creates a security interest in a vehicle for which a certificate of title has been issued by the Commonwealth, the owner shall immediately execute an application on a form prescribed by the department, naming the lienholder on the certificate, showing the name and address of the lienholder and the date of the security agreement. The certificate of title, together with the application and the required fee, shall be mailed or delivered to the department.

This section and those following consistently distinguish "owner" and "lienholder". The lienholder is the secured party; the owner is the purchaser.

Contrary to the majority, I would find that O'Dell, the purchaser of the truck, was the *owner* of the truck; Associates, the lienholder, was merely the *secured party.* Therefore, in providing service at the request of O'Dell, Turley was performing at the request of the *owner* and should have a common-law possessory lien against the truck. This lien would take priority over the interest of the secured party under § 9–310 of the Uniform Commercial Code, which provides:

When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon the goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

Granting the common-law possessory lien in this case, in addition to being required by the Vehicle Code, is also eminently practical. The Vehicle Code at § 1311 requires that each operator of a vehicle shall have in his possession while operating the vehicle the state registration card. Section 1308 of the Vehicle Code requires that the registration card contain the following information:

(a) General rule.—The department, upon registering a vehicle, shall issue to the registrant a registration card which shall contain the registration number assigned to

the vehicle, the name and address of the registrant and the name of the owner, if other than the registrant, a description of the vehicle including the vehicle identification number, the expiration date and such other information as may be determined by the department.

Since the registration card must contain the name of the owner and must be in the possession of the operator of the vehicle, the garageman could determine the identity of the record owner of the vehicle with ease, and, relying on his right to assert a common-law possessory lien against a non-paying owner, perform service on the vehicle at the request of the owner. This approach is simple and protects the interests of all parties: it is common for security agreements to provide that the debtor must keep the vehicle in good repair, a practice also in the interest of the owner. It is anomalous to make such a requirement, which obviously benefits both borrower and lender, and then make it difficult for the borrower-owner to secure services to maintain his vehicle.

But there are also other reasons to disagree with the majority view. *Meyers v. Bratespiece*, the nineteenth century case relied on by the majority to achieve its result, is inapplicable to the facts of this case. While it is true that *Meyers* sets out the rule that a workman must perform work at the request of the owner, it does not answer the question of who the owner is. In fact, in the *Meyers* case and in every other case cited in the majority opinion, some sort of bailment or installment lease is involved, not ownership, unlike the present case. In *Meyers*, for example, A owned cloth and contracted with B to make it into coats. B was a bailee of the cloth. B then contracted with C to make the coats at a price higher than A had agreed to pay B. C performed the work on the coats and sought payment from A after B absconded. The court observed:

The goods were in [C's] possession without the consent or knowledge of [A] and it is quite probable that [C] knew [A] was the [owner] of them. *There is no claim or pretense that [B] represented himself as the owner*, and in

the absence of evidence to the contrary the fair presumption is that he correctly advised [C] as to the ownership and explained to him how the goods came to his possession.

174 Pa. 119, 122, 34 A. 551 (1896) (Emphasis added). We do not have a bailment in this case. O'Dell's name would have appeared both on the registration card and also on the title as the "owner" of the truck. In First National Bank of *Bloomsburg v. Vargo Motor Company*, 43 D. & C.2d 698 (1966), where repairs were ordered by the "record owner" of the automobile, the court held that the repairs took priority over the interest of the secured party based on the repairman's possessory lien and § 9–310 of the Uniform Commercial Code. As the lower court pointed out, "If the secured party were to prevail, it would have the diminished value of its security restored at the expense of the repairman who would receive nothing for his labor, materials and storage charges." 43 D. & C.2d at 702.[2]

Furthermore, one of the cases cited by the majority, *Stern v. Sica*, 66 Pa.Super. 84 (1917) positively contradicts the majority's position. The *Stern* court distinguishes its case, involving a bailment lease contract, where no authority to charge the property with a lien may be inferred, from the case where the mortgagor has a definite and substantial interest in the property:

> We certainly do not think . . . that a bailee of a chattel for hire or otherwise should have an unlimited right to charge that chattel with repairs to the undoubted prejudice of the owner of the chattel. As to the authorities cited where a chattel mortgage was under consideration and the title transferred by virtue of the statute to the mortgagee: The mortgagor, who retained the possession and use of the chattel, left it at a repair shop for repairs; he had, at all times, a substantial interest in the

---

**2.** Research indicates that there is a paucity of authority on the question of whether a garageman can assert a common-law possessory lien against a vehicle encumbered with a security interest, for repairs made at the request of the purchaser of the vehicle. It seems likely that the reason there have been no recent appellate decisions is that for years assertion of these liens has been unquestioned.

subject-matter itself. As was said by Chief Justice GRAY, in *Hammond v. Danielson*, 126 Mass. 294, "a means of earning the wherewithal to pay off the mortgage debt" and the increased value of the property by the repair inured to the mortgagor's benefit. When the mortgagor paid his mortgage he was again the owner of the property. Authority to charge the property with a lien in such case might be inferred.

66 Pa.Super. at 89–90. In other words, according to *Stern v. Sica*, while an ordinary bailment lessee has no authority to encumber the property which it leases, a mortgagor may have such authority.[3] This conclusion can hardly be said to be supportive of the majority's position in the present case, where O'Dell holds title to the property and is not a bailment lessee.[4]

Finally, if there are good reasons to decide that O'Dell was an "owner" of the truck, viz., there was an actual sale and not a bailment or installment lease; O'Dell's name would have appeared on the registration and title; only O'Dell could alienate the truck; O'Dell, prior to the truck's breakdown would have had exclusive possession and control of the truck; there are no immediate apparent reasons to find, as the majority does, that Associates was the exclusive "owner". I would decide that O'Dell has an "ownership" interest in the truck adequate to authorize service to the truck and establish Turley's common-law possessory lien. It may be that Associates also has an ownership interest in the truck and that under certain circumstances, Associates too

3. One wonders, under the majority's rationale, when, short of complete payment of its debt, the debtor may be said to become the "owner" of the property. Would the debtor be an "owner" if ten payments remained to be made? Would he be an "owner" if five payments remained to be made? One payment?

4. Although the secured party in this case, under the terms of the sales contract, purports to reserve title in itself, § 1–201(37) of the Uniform Commercial Code operates to reduce this purported reservation of title to a mere security interest. Section 1–201(37) provides, in pertinent part:

> The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 2–401) is limited in effect to a reservation of a "security interest."

would be authorized to order services which would establish a common-law possessory lien against the truck.[5]

I, therefore, dissent.

LARSEN, J., joins in this dissenting opinion.

5.  The creditor's right to encumber the property would arise upon the debtor's default when the secured party is in possession of the collateral. Section 9–501 of the Uniform Commercial Code governs this situation and provides in pertinent part:

(1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in Section 9–207. The rights and remedies referred to in this subsection are cumulative.

(2) After default, the debtor has the rights and remedies provided in this Part, those provided in the security agreement and those provided in Section 9–207.

Section 9–207, in pertinent part, provides:

(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession . . .

(2) Unless otherwise agreed, when collateral is in the secured party's possession

(a) reasonable expenses (including the cost of any insurance and payment of taxes or other charges) incurred in the custody, preservation, of the collateral are chargeable to the debtor and are secured by the collateral.