612 A.2d 1081

## WILLIAMSPORT NATIONAL BANK

v.

**Wayne E. SHREY, J.J. Heavy Repair, Incorporated and Charles Hall, d/b/a Halls Marine.**

**Appeal of J.J. HEAVY REPAIR, INCORPORATED.**

Superior Court of Pennsylvania.

Argued June 4, 1992.

Filed Sept. 10, 1992.

Scott Williams, Williamsport, for appellant.

Thomas A. Marino, Williamsport, for Williamsport Nat. Bank, appellee.

Before MONTEMURO, KELLY and CERCONE, JJ.

MONTEMURO, Judge:

This is an appeal from an order entered which declared that appellee's security interest in the property in question had priority over the claim of appellant. Appellant raises the following issues on appeal: (1) whether the trial court erred in finding that appellee has a security interest in the property in question; (2) whether the trial court erred in finding that appellee was an "owner" of the property in question; and (3) whether the trial court erred in finding that the appellee did not impliedly consent to the repairs done to the property in question. For the reasons set forth below, we reverse.

On January 31, 1990, appellee, Williamsport National Bank, lent $25,000.00 to Wayne Shrey. In exchange, Shrey executed a Promissory Note wherein he agreed to repay the principal sum of $25,000.00 on or before January 31, 1991, together with interest due monthly, at the rate of 12% per annum. To secure payment of the money he owed, Shrey also granted to appellee a security interest in, among other things, two motors and a 1988 31-foot custom built Marlin boat and a trailer. Appellee's security interest in the trailer was perfected by the notation of its lien on the certificate of title thereto. According to appellee, its security interest in the boat was perfected by an existing financing statement filed on April 15, 1988 [1] and also by a financing statement filed on February 13, 1990.

In February 1990, Shrey failed to make the monthly interest payment as it became due. Thereafter, Shrey continued to fail to make timely payments as provided for in the loan agreement. When Shrey failed to correct his default, appellee attempted to repossess the collateral securing the loan.

At this point, appellee learned that the boat and trailer were in the possession of appellant, J.J. Heavy Repair, Inc. The boat had been in the possession of J.J. since November 19, 1989. On that day, Mr. Shrey was involved in a one

1. This financing statement was not part of the trial court record, and thus cannot be considered on appeal.

vehicle accident while towing the boat and trailer. The boat and trailer were both damaged to the point that Shrey could not move them from the scene. As a result, Shrey called J.J. and requested that they tow the boat and trailer to their garage. The boat remained in the garage for several months and in April 1990 J.J. started to repair the boat per Mr. Shrey's request. The motors, the bank discovered, were in the possession of Hall's Marine.

The bank asked Shrey, J.J. and Hall to deliver its collateral to it. When all three refused, appellee instituted a replevin action on May 14, 1991 to recover the collateral pledged as security for the $25,000 loan. On May 28, 1991, appellee filed a Motion for a Writ of Seizure. Thereafter, appellee and Hall agreed on a settlement regarding the motors in Hall's possession. J.J., however, filed an answer and counterclaim asserting that it had a superior possessory lien on the boat as a result of the repair work it had done on the boat.

On August 8, 1991, after a hearing on appellee's Motion for a Writ of Seizure, the trial court granted the motion. On September 4, 1991, a default judgment was entered against Mr. Shrey for failing to answer the Complaint. Thereafter, on September 11 and 12, 1991 a hearing was held to determine the priority of appellee's and appellant's security interest in the boat. On September 12, 1991, the trial court ordered that appellee's security interest in the boat was superior to J.J.'s possessory lien, except as to the towing charges incurred on November 19, 1989. The basis for the trial court's decision was that J.J. did not receive consent from the bank, the holder of a security interest in the boat, prior to doing the repair work on the boat. It is from this order which appellant now appeals.

On appeal, appellant raises three separate issues regarding the trial court's findings relating to appellee's security interest. On appeal, however, we address only the issue relating to the trial court's finding that J.J. did not receive consent from the bank prior to doing repairs to the boat. The trial court stated that since the bank, the holder of a

perfected security interest in the boat, did not consent to the repair work done to the boat by J.J., its security interest had priority over J.J.'s repairman's lien. Since we find, however, that such consent is not needed under the Uniform Commercial Code, we reverse.

In reaching its decision, the trial court followed the opinion of the Pennsylvania Supreme Court in *Associates Financial Services v. O'Dell*, 491 Pa. 1, 417 A.2d 604 (1980). In *O'Dell* the supreme court held that

> Whenever a workman or artisan, by his labor or skill, increases the value of personal property placed in his possession to be improved he has a lien upon it for his proper charges until paid, but in order to charge a chattel with his lien, the labor for which the lien is claimed must have been done at the request of the owner or under circumstances from which his assent can be reasonably implied. It does not extend to one not in privity with the owners.

*Id.*, 491 Pa. at 4–5, 417 A.2d 604 (quoting *Meyers & Bro. v. Bratespiece*, 174 Pa. 119, 121, 34 A. 551, 551 (1896)[2]. This decision, however, was decided under the common law rather than under the Uniform Commercial Code. As is apparent from note 1 of the opinion, the court relied upon the old Uniform Commercial Code and its accompanying Pennsylvania Bar Association Notes in reaching its decision. *See* 12A P.S. § 9–310. These notes, however, analyzed the common law, and the decisions, such as *Meyers & Bro. supra*, prior to the enactment of the U.C.C. in Pennsylvania. Under the U.C.C. and the Comments to it, however, a different result is mandated.

13 Pa.C.S.A. § 9310 provides

> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law

**2.** In *O'Dell* the court also held that the holder of a perfected security interest is an "owner" of the collateral, and thus must consent to the repair work.

for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

The purpose of this section is to ensure that "liens securing claims arising from work intended to enhance or preserve the value of the collateral take priority over an earlier security interest even though perfected." 13 Pa.C.S.A. § 9310 Comment 1. The intended effect of § 9310 is to make

the lien for services or materials prior in all cases where they are furnished in the ordinary course of the lienor's business and the goods involved are in the lienor's possession. Some of the statutes creating such liens expressly make the lien subordinate to a prior security interest. This section does not repeal such statutory provisions. If the statute creating the lien is silent, even though it has been construed by decision to make the lien subordinate to the security interest, this Section provides a rule of interpretation that the lien should take priority over the security interest.

*Id.* at Comment 2.

In the instant case, J.J. is claiming a common law possessory repairman's lien. Since this is a lien created by rule of law, 13 Pa.C.S.A. Section 9310 governs the outcome of the case. The record establishes that J.J. did not receive the implied or express consent of the bank before doing the repair work to the boat.[3] Under the common law, this failure to receive the bank's consent would be fatal to J.J.'s claim that his lien was superior to that of the bank. *See Meyers v. Bratespiece, supra.* Under the U.C.C., however, no consent is needed in order to obtain a possessory lien. As aptly stated by the Supreme Judicial Court of Maine:

3. Although appellant argues that the bank impliedly consented to J.J.'s repair work, we find this argument to be without merit. The trial court found, and we agree, that there was no evidence that the bank consented to the work. In any event, in light of our holding in this case, the issue of whether the bank consented to the repairs is not germane to the priority determination.

> To read in Section 9–310 the limitational requirement of the common law that the perfected security interest holder must have given consent to the repairs before the common law mechanics lien can arise would practically deprive that section of the Act of any meaningful effect, since there would be few, if any, cases where such advance consent would be present.

*General Motors Acceptance Corporation v. Colwell Diesel Service and Garage, Inc.*, 302 A.2d 595, 599 (1973). Similarly, in *Nickell v. Lambrecht*, 29 Mich.App. 191, 185 N.W.2d 155 (1970), the Michigan Court of Appeals held that:

> It would subvert the apparent purpose to adopt the view of those pre-code cases that prefer the conditional sales vendor to the repairman and to hold for the plaintiff in this case on the ground that he did not consent to the creation of the repairman's lien and, thus, no lien arose at common law. To so hold would be to emphasize, to the exclusion of all other considerations, the retention by the plaintiff of title and might revitalize formalisms eliminated by the code. This would be contrary to main threads of the code: the de-emphasization of title in favor of a functional approach and the elimination of distinctions in the law's treatment of security interests based on their form.

*See also Manufacturers Acceptance Corp. v. Gibson*, 220 Tenn. 654, 422 S.W.2d 435 (1967) (wherein it was held that claims arising from work intended to enhance or to preserve the value of the collateral would take priority over an earlier security interest, even though perfected, and even though the artisan's services or materials were furnished without the knowledge or approval of the secured party.) The following courts have also found that the common law lien of a repairman was entitled to priority under the U.C.C. over a previously perfected security interest: *National Bank of Joliet v. Bergeron Cadillac, Inc.*, 66 Ill.2d 140, 5 Ill.Dec. 588, 361 N.E.2d 1116 (1977); *Krueger v. Texas State Bank*, 528 S.W.2d 121 (Tex.Civ.App.1975); *Corbin Deposit Bank v. King*, 384 S.W.2d 302 (Ky.1964); and

*Gables Lincoln–Mercury, Inc. v. First Bank and Trust Company of Boca Raton,* 219 So.2d 90 (Fla.App.1969).

The implications of failing to follow the U.C.C. as explained above would seriously impede upon the ability of repairmen, such as J.J., to exist in today's commercial market. The ability of the repairman to protect himself by seeking the permission of a lienholder is commercially unrealistic. Unlike the *O'Dell* case, the instant case does not involve a motor vehicle which is required to have a certificate of title indicating the existence of any encumbrances. Rather, this case involves a boat, which is not even required to have a certificate of title. Thus, contrary to the situation in *O'Dell,* the repairman cannot protect himself by merely checking the title for indebtedness. Rather, the repairman would have to check to see if any financing statements were filed giving anyone security in the boat. Checking for a recorded financing statement could end up being a cumbersome task. To be completely protected, the repairman would necessarily have to check for a financing statement in the county in which the boat owner lives (or with an out of state debtor, in the office of the prothonotary where the boat is kept). See 13 Pa.C.S.A. § 9401. Imagine the situation where a Pennsylvania boat owner takes his boat to Florida for a fishing trip. While in Florida, the boat breaks down and the owner takes the boat to a repair shop in Florida. Must the Florida repairman go to Pennsylvania, to the county where the boat owner lives, go to the office of the prothonotary, and check to see if a security interest has been recorded? Suppose the boat breaks down on Friday afternoon, does the boatowner have to wait until Monday morning so that the repairman can check the office of the prothonotary? Even if the repairman finds a recorded financing statement, and can identify the secured party, what steps must he then take to get permission to complete the repairs? If the secured party has more than one office, which office must the repairman get permission from? Furthermore, what type of permission need the repairman get? A verbal approval on the telephone? A written

approval? And who must the repairman get the approval from? From anyone in the office? Clearly, such a result would impede upon the repairman's ability to function and exist in today's commercial market. This type of absurd situation is exactly what Section 9310 is designed to prevent, and demonstrates the necessity of following the rule that gives repairmen priority, regardless of whether or not they receive permission from a secured party.

Accordingly, in keeping with the intended purpose of Section 9310 and the law among the various other jurisdictions cited herein[4], we now hold that the common law repairman's lien given by rule of law within the purview of Uniform Commercial Code § 9310 has priority over a prior security interest, even if perfected, regardless of whether or not consent for the repairs was given by the holder of the security interest. Thus, in the instant case, we find that as a result of the repair work J.J. performed on Mr. Shrey's boat, he acquired a common law possessory lien in the boat. This lien, under 13 Pa.C.S.A. § 9310, takes priority over the security interest of Williamsport National Bank, whether or not that interest was perfected.[5]

Order reversed.

---

4. We note that one of the main purposes of the Uniform Commercial Code is "to make uniform the law among the various jurisdictions." 13 Pa.C.S.A. § 1102(b)(3).

5. In light of our holding today, we find it unnecessary to decide whether the trial court erred in finding that the bank's security interest in the boat was perfected.